## Abel v. Wuesten, et al.

(Decided January 26, 1911.)

### Appeal from Campbell Circuit Court.

Waste.—A tenant is not guilty of waste who repairs and alters an old building so as to add materially to its value, when the alterations do not change the character of the building in such a way as to make it impossible to restore the building to its former condition at the expiration of the lease.

CRAWFORD & CRAWFORD and OTTO WOLFF, for appellant.

RAMSEY WASHINGTON, for appellees.

OPINION OF THE COURT BY WM. ROGERS CLAY, COM-MISSIONER—Affirming.

In February, 1906, appellant, Henry Abel, leased to appellees, Wuesten and Mason, two adjoining buildings located on Monmouth street in the city of Newport. The lease was to run for five years, with the privilege of renewing the same for ten years more. One of these buildings was made of brick and was an old-established beer saloon. The back rooms and upper floors of this building were used for a dwelling. Adjoining the brick building was a frame building, which was originally a wagon shed. The front of this building included a hallway, which was used as an entrance to the dwelling part of the brick building, and two store rooms, each 15x18 feet in size. The partitions dividing these two stores from each other and from the balance of the building consisted in part of flooring and in part of 2x4 studding covered with lath and plaster. The second floor of the frame building consisted of a meeting room for public gatherings, with check room and toilet. In the rear of the frame building there were several bowling alleys.

The lease contained the following covenant:

"To take good care of the premises and return the same at the expiration of said term, in as good condition as received, reasonable use and ordinary wear and tear thereof, and damages by fire or other unavoidable casualty excepted; and not to erect or permit to be erected on said premises any nuisance, or commit any waste.

"The lessee will not at any time use the premises or permit them to be used in such manner as to increase the rate of insurance thereon.

"This lease, at the option of the lessor, shall be void and forfeited in case of any violation on the part of the lessee of any stipulation herein contained."

A short time before the beginning of this litigation, appellees, Wuesten and Mason, agreed to sublet the frame building to appellee, I. Frankel, for the purpose of operating a moving picture theatre therein. To this end Frankel had certain plans drawn, looking to several changes in the building. On July 26th, 1909, work was commenced on the building for the purpose of carrying out these plans. On the same day appellant brought this action to enjoin appellees from proceeding with the work, and obtained a temporary restraining order. On July 29th appellant amended his petition and charged that appellees were committing waste and asked that the lease be declared void and forfeited. On August 13th the court heard a motion to dissolve the restraining order and a motion for mandatory injunction. The restraining order was dissolved and the motion for an injunction overruled.

Sometime later appellees, Wuesten and Mason, had a misunderstanding with appellee Frankel. The latter and appellant then agreed that, if appellant won in this suit, he would let Frankel continue in the possession and use of the premises as his tenant. Thereupon Frankel notified the attorneys representing both him and appellees that he desired to drop the case. Judgment was then entered in favor of appellant. Appellees, Wuesten and Mason, learning of the judgment, employed another attorney, who asked that the judgment be set aside. The judgment was set aside, evidence taken, and the case submitted. Judgment was entered in favor of appellees, Wuesten and Mason, and from that judgment this appeal is prosecuted.

According to the testimony for appellant, he told appellees that before any alterations were made in the building he must be consulted and his consent secured. On learning that his building was being wrecked, he informed appellees that the work must be stopped, unless they could assure him that he would not be injured. They asked him to be patient and told him that Frankel would be over from Cincinnati about eleven o'clock. Frankel did not appear. He again spoke to Wuesten and Mason, who telephoned to Frankel, and then informed appellant that Frankel would be over after dinner. The appellant waited until two o'clock, and, Frankel not appearing, he instituted this action and se-

cured from the clerk a temporary restraining order. When the changes were made in the building the insurance company canceled appellant's policy of insurance. At the time of filing the amended petition appellees, Wuesten and Mason, had torn out the window frames and sash in front of the building, had removed the plastering from the walls and ceiling of the hall in the second floor, had cut and removed the partitions, and also the floors and ceilings of said building together with the wainscoting therein. To restore the building to its former condition, it would require from $1,450 to $2,824.

The evidence for appellees is to the effect that the frame building was out of repair and in a dangerous condition. The front, the sills, the partitions and the studding were all rotten. It was a dangerous place to work in. The bowling alleys were also out of repair. The lease, however, provided that the lessees had the privilege of making any changes or alteration in the space occupied by the bowling alleys. When appellees showed appellant the plans for the proposed changes in the building, appellant said: "That will be all right; let us go in and have a drink." He also said: "When the men get started to tear this place down, why call me up; I know how the building was put up, and I can tell them how to tear it down." Appellant watched the men at work from nine a. m. until two p. m. When he came to the conclusion that his insurance would be canceled and there might be placed against the building mechanics' liens which he would be called upon to pay, he instituted this action for the purpose of restraining appellees from making the alterations. The only changes made in the building outside of the bowling alleys was putting in a new floor, removing the store partitions on the first floor, the front part of the up-stairs floor and the front of the building, and building a new front further back from the sidewalk than the old one. An old stairway was also removed and a seat in the toilet room taken out. The cost of this improvement was variously estimated at from $3,000 to $7,500. It will take about $800 to restore the building to the condition it was in prior to the time the changes were made. The property is now far more valuable than it was in its former condition, and no mechanics' liens against the property have been filed. The increase in the insurance rate was small and was paid by appellees.

While it may be true that under the earlier English decisions the mere moving of a door or window, or the taking away of wainscoting, was an act of waste, the

doctrine of those cases has been greatly modified to meet the changed conditions of the present time. Thus, in Taylor on Landlord and Tenant, section 348, it is said:

"But this strictness of the common law has been essentially modified in this country, and it is now understood, it is not waste to erect a new edifice upon the demised premises or make an alteration therein, if it can be done without destroying or materially injuring the building or other improvements already placed thereon. He has no right, indeed, to pull down valuable buildings or to make improvements, or alterations which will materially and premanently change the nature of the property so as to make it impossible for him to restore the premises at the expiration of the term, substantially as he received them; but to apply the ancient doctrine of waste in modern tenancies, even for short terms, would in some of our cities and villages, be an entire stop to the progress of improvement, and deprive the tenant of those benefits which both parties contemplated at the time of the demise, without any possible advantage to the owner of the reversion."

In Washburn on Real Property, volume 1, sections 25, 26 and 27, we find the following:

"Section 25. But it is apprehended that more liberal rule is now applied in respect to the constructive acts of waste in England than formerly, and there certainly is a much more liberal construction put upon such acts in this country than that of common law. Thus the cutting a door in a house, if it did no actual injury, and did not tend to destroy the evidence of the reversioner's title, would not be waste. The proper test in all these cases seems to be, does the act essentially injure the inheritance as it will come to the reversioner? And this is a question for the jury.

"Section 26. The law seems to be correctly stated by the chancellor in Winship v. Pitts. It is not waste for a tenant to erect a new edifice upon the demised premises provided it can be done without destroying or materially injuring the buildings or other improvements already existing thereon. He has no right to pull down valuable buildings or to make improvements or alterations which will materially or permanently change the nature of the property so as to make it impossible for him to restore the premises at the expiration of the term. It can not be waste to make new erections upon the demised premises which may be removed at the end of the term without much inconvenience, leaving the property in the same

770 KENTUCKY REPORTS. [Vol. 141.

situation it was at the commencement of the tenancy, and the materials of the new building, if left on the premises, would more than compensate the owner, or reversioner, for the expense of their removal.

"Section 27. In accordance with the principle thus laid down, various cases have been decided in this country. Thus, in the above case of Winship v. Pitts, the tenant for years of a house and lot in the city of New York erected a livery stable upon it. In another, the tenant for years tore down a dilapidated building and erected another of the same size on the same foundation, and at the end of the term moved it off. In another, the tenant for life erected a new smoke house in place of one gone to decay, from materials obtained from the homestead. In another, the tenant for life tore down a dilapidated barn, which was in danger of falling, and it was held not to be waste."

Considered in the light of these principles, we can not say that the act of appellees, in making the alterations referred to, was waste. The evidence shows that the building itself was in bad repair. The sills and studding at the bottom and the partitions and sills under the main north wall were rotten. The roof was in danger of falling, as was also the second floor in case a large crowd gathered there. The building, as changed and altered, is much more substantial and valuable than it was before. Considering all the evidence, we are inclined to the opinion that it will not take over $1,000 to restore the building at the end of the lease, in the event appellant desires that it be restored. The building has not been so changed or altered that it can not be restored. Under these circumstances, we conclude that appellees were not guilty of waste. Aside from this consideration, there is evidence tending to show that appellant consented that the changes might be made. That being true, he will not be heard to complain of the changes, or permitted to insist upon a forfeiture of the lease because the changes were made.

Upon the whole case, we see no reason for disturbing the finding of the chancellor.

Judgment affirmed.