# OCTOBER TERM, 1916.*

---

## ANSTAYS *v.* ANDERSON.

1. WASTE—INJUNCTIONS—LIFE ESTATE—REVERSION.

   In an injunction suit to prevent waste by a life tenant who attempted to move a dwelling and certain outbuildings on the inheritance, the proper test to apply was whether or not the acts proved essentially injured the property, as it would pass to the remainderman.

2. SAME—REMOVAL OF BUILDINGS.

   Where the owner of the life estate moved a dwelling house that was not in bad condition back from the highway and located the house back about 35 rods on a foundation that he had constructed and had either given away or removed certain outbuildings, filled in a cellar, or done other work that would tend to make it more convenient for his use, in connection with his other property, no question of permissive waste was involved: if liable at all, he was chargeable in such action for active or voluntary waste.

3. SAME—JOINT WRONG—STATUTES.

   Under 3 Comp. Laws 1915, § 14940, defining the action and enacting that they should be respectively liable in an action on the case, each life tenant is made liable for his own acts and a grantor would not be responsible for the acts of his successor in title by conveyance.

4. SAME—RIGHT OF ACTION—ACCOUNTING.

   The life tenant was liable in such action for damages and for an accounting and it was not a sufficient defense that he had rendered the property more valuable for some purposes than it was before, since the owner of the remainder was entitled to have the proprety turned over to him in the same condition as when the defendant received it.

---

*Continued from Vol. 193.

Appeal from Kent; Brown, J. Submitted October 10, 1916. (Docket No. 101.) Decided December 21, 1916.

Bill by Ted B. Anstays and another against William H. Anderson and others to restrain the commission of waste and for an accounting. From a decree dismissing the bill, complainants appeal. Reversed, and decree entered for complainants.

*Lillie & Lillie* (*Lillie, Lillie & Lillie*, of counsel), for complainants.

*Kleinhans, Knappen & Uhl*, for defendant Anderson.

STONE, C. J. The bill of complaint in this cause was filed by certain remaindermen against the defendants William H. Anderson and John V. Hauser, as tenants for life, to restrain the defendants from committing waste by moving any buildings on certain premises described, and from in any manner destroying or injuring the freehold of said premises, and for an accounting to the plaintiffs for the injury already done, and the waste already committed.

It appears that on June 21, 1906, John V. Hauser, one of the defendants, being the owner thereof, conveyed to his wife, Laura J. Hauser, a strip of land in Sparta township, Kent county, consisting of 10 acres, being 106 2/3 rods in length, and being bounded upon the north by the right of way of the Toledo, Saginaw & Muskegon Railway Company, and there being a highway on the east side thereof. In and by said deed the grantor reserved the possession and use of said land for and during his lifetime. The grantee of said deed, Laura J. Hauser, having been in possession of said premises, died intestate on May 19, 1910, leaving surviving her, as her heirs at law, four

children by a former husband, to wit, Eliza Wain-wright, Lena Anstays Shoemaker, William H. Anstays, and Ted B. Anstays. On April 27, 1914, the said John V. Hauser conveyed his life estate in and to said premises above reserved to the defendant William H. Anderson. Mr. Hauser had lived upon the premises from the time of the death of his wife until his deed to defendant Anderson. He was 60 years old at the time he conveyed his interest in the premises to Mr. Anderson. Defendant Anderson owns a large farm just across the railroad right of way, and to the north of the Hauser property. He also owns 25 acres which adjoins the Hauser property on the south. This makes the Hauser property lie directly between the two farms. At the time Mr. Anderson purchased the life interest of John V. Hauser, the following buildings stood upon the premises: A large two-story frame dwelling house, consisting of an upright and two-story wing, with German siding, with a natural stone, seven-foot basement under the whole house. The house stood upon a side hill about ten feet west from the main traveled highway, and three or four rods from the fence of the railroad right of way upon the north. The basement had an outside door. There were seven or eight rooms in the house, all plastered and in fairly good condition. At the corner of the house stood a dug cement well about eighteen feet deep. Near the house there was a structure used as a henhouse, with a shed roof. There was also a pigsty, and a barn, or a building that was used as a barn, which consisted of poles or small timbers stuck in the ground, which was sided up, and had a shed roof, and the main part served the purpose of a barn for a few head of cattle and one or two horses, and whatever stock Mr. Hauser had. There was also a shed or lean-to where he kept his hay and buggy. It is claimed by the plaintiffs

that at this time the dwelling was of the value of $700 or $800. The value of the outbuildings was in dispute, some witnesses claiming them to be worthless, and others placing small valuations thereon.

The testimony shows that, for some years prior to the conveyance to defendant Anderson of said life interest, this property had been used independently, as a small farm and home of the Hauser family. The house was located near a good highway, and back and west of the house there was a small orchard, consisting mainly of pear trees. The evidence shows that defendant Anderson, owning the lands upon both the north and south of these premises, desired to change the location of the dwelling house. It was not located where he thought it should be in connection with his other holdings. He therefore proceeded to move the house back about 35 rods into the field, and placed it within 6 to 10 feet of the fence of the railroad right of way, and it was standing in this condition upon blocks at the time of the filing of the bill of complaint and the issuance of the temporary injunction. In moving the house the plaster had fallen off the walls, the house was left out of plumb, and the doors would not close. Some of the siding had been torn off to fasten planks on in the course of moving, and one or more fruit trees had been removed for the purpose of placing the house. The chimney had been entirely torn down and piled on the floor in such a manner that it sunk the floor away from the walls around the mopboards below the plaster. Mr. Anderson, stating that the outbuildings were worthless, gave the same to the defendant Hauser and a neighbor, and they had been entirely removed from the premises; no part of them remaining upon the property. The well at the corner of the house had been entirely filled up, and no trace of it could be found. The natural stone foundation

under the house where it formerly stood and the cellar had been caved in and buried and filled over with dirt.

The bill of complaint was filed on or about August 22, 1914, and the condition of the property at that time was as above stated, and it remained in that condition until the following summer. In the meantime the defendants had appeared in the case, and a demurrer had been filed on the ground, among other things, of the nonjoinder of parties plaintiff. Thereupon the bill was amended by making William H. Anstays and Eliza Wainwright, the brother and sister of the plaintiffs, defendants. Very shortly thereafter both of these last-named defendants quitclaimed their interests to the plaintiff Lena Anstays Shoemaker, after which the demurrer was overruled and the defendant Anderson answered. The bill was later taken as confessed by the defendant John V. Hauser. In the summer following the filing of the bill, the defendant Anderson proceeded to put some repairs on the house at the point 35 rods from the highway, where it was standing in the field, at the time the bill was filed. He had the rooms in the house replastered, the house straightened up and made plumb, so that the doors opened and closed, a foundation placed under the upright part of the house and the wing, a basement placed under the upright part of the house, but not under the wing. The latter is a cement basement. The house was put in fair condition, and the ceilings and walls papered, the woodwork painted, and a new galvanized iron roof was put on the house, and it has been painted upon the outside. This was the condition of the house at the time the case was heard upon pleadings and proofs in November, 1915. The facts in the case as to the removal of this dwelling house by the defendant Anderson and the giving away and removal of the outbuildings are not much in dispute.

The bill alleges that the defendant Hauser removed the outbuildings personally, but the undisputed evidence in the case is that the same were removed after Mr. Anderson became the owner of the life estate, and by his consent. The defendant Anderson, who was examined by the plaintiffs under the statute, admitted that he caused the stone where the foundation was to be covered up, and knocked the walls in far enough, so that he could scrape over them and have plenty of room to plow without hitting stone. He also stated, in testifying, that when he moved the house he had in mind using it for a tenant who was looking after his own property, and that was what he moved it back there for. The court below dismissed the bill of complaint, and plaintiffs have appealed.

There is much discussion of the legal propositions involved in the case by counsel for both plaintiffs and defendant Anderson. The meritorious question is: Has there been actionable waste committed? The proper test in all such cases seems to be: Do the acts proven essentially injure the inheritance as it will come to the reversioners? *Abel* v. *Wuesten,* 141 Ky. 766 (133 S. W. 774) ; *Id.,* 143 Ky. 513 (136 S. W. 867), reported in Am. & Eng. Ann. Cas. 1912C, 389, and see note.

There is no evidence in the case to show any material change in the neighborhood where this property is located during the last 20 years, except in the fact that Mr. Anderson had become the owner of lands upon both sides of these premises, and that he desired to use the whole as one property in connection with his farming enterprise. The adjacent properties are used for farming purposes, and it is practically a country location.

We think that, under the pleadings and evidence, there is not presented in this case any question of permissive waste on the part of the defendant Ander-

son.  If liable at all, he is liable for what is termed voluntary, active waste, by reason of what he did in connection with the dwelling house and outbuildings; and we think that no case of waste was made out here as to the defendant John V. Hauser.  He, at the time the bill was filed, had sold all of his interest in the premises and was out of possession.  We think that our statute makes each life tenant in possession liable only for his own acts.  3 Comp. Laws, § 11116, and see compiler's note (3 Comp. Laws 1915, § 14940) ; also, *Beers* v. *Beers,* 21 Mich. 464-469.

We think that in disposing of this case we should consider the quality and condition of the estate and property at the time defendant Anderson became the owner of the life estate of Hauser, the nature and condition of the property, and the relation of it to other property in the vicinity.

It is the claim of the defendant Anderson that, by the changes which he has made, he has improved the condition and value of the premises.  That the same may be more valuable to him in connection with the use which he wishes to make of it and the adjoining property, is not the controlling question in the case. We are impressed with the claim of the plaintiffs that they have the right to have this property restored to them at the expiration of the life estate, substantially in the same condition it was in when Anderson took possession of it.  The question whether voluntary, active, destructive waste has been committed here by the conduct of defendant Anderson becomes, in our opinion, one of fact.  This is not a case where there had been any changed condition of surroundings which deprived this property of its value as a single holding, or small farm, so as to bring the case within the doctrine of *Melms* v. *Brewing Co.,* 104 Wis. 7 (79 N. W. 738, 46 L. R. A. 478), cited by defendants' counsel, and other kindred cases.

We do not recognize the right of Mr. Anderson, as life tenant, to make material changes or alterations in the buildings to suit his taste or convenience, merely. In our opinion there is evidence in the case to warrant the conclusion that the removal of this dwelling house from near the highway, where it was originally built, a distance of 35 rods back from the highway into the field, and in close proximity to the railroad right of way, was a damage and waste to the estate of plaintiffs as reversioners, and that it would be a damage to any persons who desired to use the property for the purposes for which it was originally used, as it seems to be adapted for use as a small farm located in the country near the village of Sparta, and within a few miles of the city of Grand Rapids. Such property has a peculiar value as a small holding, and we think the plaintiffs have the right to have the property turned over to them in the condition it was when defendant Anderson received it, and that it is no answer to say that the defendant has improved the condition of the dwelling house, and that it is more valuable to him in its present condition in connection with his other holdings. We are not unmindful of some testimony in the record of witnesses who testified that the property was more valuable as a separate holding, with the dwelling house 35 rods back from the road upon a narrow strip of land, necessitating at least a driveway, if not a lane, in order to reach it, and being placed within a few feet of the railroad right of way. Such testimony does not appeal to us as reasonable, and we think the conduct of the defendant Anderson amounted to a destructive waste; and that at the time the bill was filed plaintiffs were entitled to the temporary injunction which was granted to them; and that, when the defendant made the material change which he did in the nature and character of the premises, it cannot be justified upon the

theory that for some purpose it is more valuable to him. *Brock* v. *Dole,* 66 Wis. 142 (28 N. W. 334).

The weight of authority seems to be to the effect that, where an injunction to prevent future waste is asked for and granted, a court of equity, to prevent a multiplicity of suits, may also decree an accounting and satisfaction for waste already committed. 40 Cyc. p. 524, and cases there cited; *Dawson* v. *Tremaine,* 93 Mich. 320, 322 (53 N. W. 1044); *Duncombe* v. *Felt,* 81 Mich. 332 (45 N. W. 1004); *Stevens* v. *Rose,* 69 Mich. 259 (37 N. W. 205); *Heliker* v. *Heliker,* 184 Mich. 657-661 (151 N. W. 757); *Stroh* v. *O'Hearn,* 176 Mich. 164 (142 N. W. 865).

There is considerable conflict in the testimony in the case as to the value of the outbuildings which were of a somewhat temporary character, and more or less dilapidated, also as to the value of the well; and there is also a great difference of opinion in the testimony of witnesses as to what it would cost to replace and restore the dwelling house to its original position and condition. We have endeavored to take a reasonable view of the testimony, some of which is more or less exaggerated, and have reached the conclusion that the plaintiffs are entitled to relief in the case, and that their damages, by reason of the removal of the dwelling house, the destruction of the outbuildings and well, should be fixed at the sum of $300. A decree for that amount will be entered for the plaintiffs as their interests appear, and against the defendant Anderson, with execution therefor and costs to be taxed, and the temporary injunction will be made permanent, as prayed for in the bill of complaint.

The decree of the court below will be reversed, and one entered in this court in accordance with this opinion.

KUHN, OSTRANDER, BIRD, MOORE, STEERE, and BROOKE, JJ., concurred. PERSON, J., did not sit.