CONCRETE ENGINEERING CO., PLAINTIFF, v. GRANDE BUILDING CO. ET AL., RESPONDENTS, THOMAS L. DAWSON, APPELLANT.—86 S. W. (2d) 596.

Kansas City Court of Appeals. March 9, 1936.

*Grant I. Rosenzweig, O'Sullivan & O'Sullivan* and *Arthur N. Adams* for respondents, Jenkins & Grande Building Company.

*Raymond C. Barnett* and *John R. James* for appellant.

TRIMBLE, J.—This is an appeal growing out of an equitable mechanic's lien suit brought under section 3180, Revised Statutes Missouri 1929 (7 Mo. St. Ann., p. 5008), to adjudicate several me-

chanic's lien-claims and the right of the various parties interested in them, and in the real estate sought to be affected, arising out of the erection of a partly constructed structure located at. the northeast corner of 13th Street and Grand Avenue in Kansas City, Missouri. The property affected has a front of 123 feet running north on the east side of Grand Avenue and extending east on the north side of 13th Street, 115½ feet to an alley.

At the time the construction of the building was begun, the intention was to erect an eleven-, possibly a thirteen-, story office building at a cost of one million, two hundred and fifty thousand dollars. This was sometime in the year 1928. The construction of the proposed building was commenced and the structure partly erected, at a cost of $130,000, and then, owing to what is now known as the "business depression" throughout the country and indeed nearly the whole world, and in spite of the utmost efforts of those back of the enterprise, it became impossible to obtain funds to carry on the work, so that further erection of the building ceased, and the uncompleted structure now stands, consisting of three stories of steel reinforced concrete framework, in the basement of which, under the concrete slab of the first floor, firmly mounted and fixed on concrete blocks, are two large Kawanee-type boilers of the value of $2900 installed by Thomas L. Dawson, appellant, under his contract therefor. For these boilers, their installation and labor and materials supplied in connection with the plumbing and heating system, appellant duly filed his mechanic's lien-claim for the balance due on his account, to-wit, the sum of $2604.82. It is the one lien-claim undisposed of, or at least appealed from the judgment of the chancellor in this equitable mechanic's lien suit.

Appellant's said lien was sought to be enforced, not only on the aforesaid unfinished structure and the aforesaid real estate on which it stands, including as a part thereof said boilers and heating system, but also on all the real estate which the future and larger structure, when fully erected, was intended to occupy.

The heretofore mentioned tract of 125 by 115½ feet at the northeast corner of 13th and Grand Avenue on which the partly-erected structure stands and which it occupies, consists of the south twenty-four feet of Lot 25 (the fee of which is owned by Martin P. Kelley), and all of lots 26 and 27, Block 2, in McGee's Addition; said last named three lots are contiguous and form one tract west of said alley, fronting west and located on the east side of Grand Avenue, and constitute the aforesaid tract at the northeast corner of 13th and Grand. In addition to said tract, the lien was sought to be enforced upon Lots 16, 17 and 18, Block 2 in McGee's Addition (said last-named lots constituting, in themselves, a separate tract, lying across

and east of the sixteen and one-half foot alley aforementioned in said Block 2 and fronting east on McGee Street).

It will be observed that the steel reinforced framework, erected as aforesaid, and in the basement of which are the boilers and heating apparatus for which appellant's lien is sought, does not touch, and is not contiguous to, said lots 16, 17 or 18, but there is an alley between; and no work or improvements was ever done or furnished upon them by appellant lien-claimant. Indeed no improvements seem to have been made on them, except possibly an excavation for a garage, which may or may not have been intended for use in connection with the steel reinforced concrete framework constructed as heretofore stated. No building has ever been started on said last named lots 16, 17 or 18, and we do not find anything in the record to show that appellant did anything in the way even of excavating for said proposed or projected garage; and, it seems, that such excavation, even if done by appellant, has since been filled up. Consequently, it is not seen why it is necessary to consider any tract other than the one fronting on Grand Avenue.

Said tract was held by the following owners in fee, or groups of owners, named as such for conveniences:

The south twenty-four feet of said Lot 25 was owned in fee by Martin P. Kelley (who is still the fee owner thereof). Lot 26, Block 2, McGee's Addition was owned by John Taylor individually, but as he afterwards died, testate, by which he provided for certain trustees, and left his widow and five named children as his heirs and devisees, all of which, including said trustees, we gather into one group and designate it, for convenience, as the Taylor heirs, all of whom are parties to this equitable mechanic's lien suit.

The remainder of said tract, being lot 27 in said Block 2, McGee's Addition, being the lot immediately adjoining lot 26 on the south, was owned in fee by Andrew P. Jenkins but, as he is now dead, his share of the said portion of the building tract aforesaid, so owned in fee, is represented by said Jenkins' widow and heirs, and they constitute the third group of fee owners and are all properly made parties to this suit.

To set out the various long-time leases, made by each of said three groups of owners in fee to their respective portions of said tract, and the various extensions of time, leasehold assignments, conveyance of said leases and the various requirements and provisions of each, would require a statement of even greater length than is herein made, and would serve no good purpose. It is sufficient to say that each group of said owners in fee, and the heirs in succession of those who later died, made long-time leases, some of ninety-nine and others ninety years' duration, in each of which original long-term leases, the lessors specified and required the lessee to erect, at lessee's cost, buildings and

improvements on their respective portions of said real estate of a permanent and substantial character. For instance, Martin P. Kelley, in his ninety-nine-year lease of the south twenty-four feet of Lot 25, required lessee, within the first ten years of said leasehold term, to erect a building and improvements to cost not less than $20,000, and pay all taxes thereon, including that on the landlord's income, and fire and cyclone insurance, and in case of loss, to have such insurance devoted to the restoration of the building or improvements.

There were various provisions empowering the lessee to sell, assign, transfer and sell its interest under the lease and to sublet the same, which transfer or assignment would release the party making such, from any obligation maturing thereafter, but not from those maturing theretofore, but no assignment or transfer out of the original lessee should release it from the obligation to erect the improvements costing not less than $20,000 or from any obligation under the lease prior to the erection thereof, and the original lessee should "stand obligated as a principal obligor to the landlord for the erection of said improvements."

Afterwards, within the time for the erection of said improvements an extension of an additional five years, after the expiration of the original ten years, for the erection of said improvements was granted by said Kelley, the owner of the fee, to the original lessee and to John Taylor who had acquired the said leasehold by due assignment.

A provision in said lease from the owner of the fee, Kelley, stated that:

"Nothing herein shall authorize the tenant or any person dealing with, through or under the tenant, to charge said lands or the interest of the landlord in the premises, or in this lease, with a mechanic's or any lien or encumbrance of any kind whatsoever, on the contrary, all persons dealing with, through or under the tenant, shall be deemed to release and waive all claims against the landlord and his property; and the right and power of the tenant, by any act or omission of the tenant, to charge any lien or encumbrance of any kind against the landlord, or his property, is hereby expressly denied."

A further provision, in addition to the extension of time in which to erect the improvements called for in the lease, was added to the lease, giving the tenant, at the end of the ninety-nine year term, the option to buy from the landlord the land itself and the landlord's interest in the improvements.

Likewise the portion of said tract owned in fee by Andrew P. Jenkins, Lot 27, Block 2, McGee's Addition, was leased for ninety-nine years, which lease, by mesne assignments, came to be also owned by John Taylor.

Said lease contained provisions for the sale of all buildings and improvements on said land to the lessee at the price of $40,000, of which

$10,000 was acknowledged to have been paid, and the remaining $30,000 was assumed by the lessee. Said lease further provided that the building now on said premises was not to be torn down or removed by the tenant until after the $30,000 and interest had been paid.

It was further provided in said lease from Jenkins that, within the first ten years of the term of said lease, the tenant would erect improvements to cost not less than $40,000 and maintain them in good condition during the full term of said lease, all to be erected and maintained and kept in repair solely at tenant's own cost and expense, and the said tenant would "save the landlord harmless from any . . . expense or liability" by reason of the construction and maintenance of said buildings, "or from any lien, claim, judgment or liability incurred by reason of the erection of such improvements," including all claims and suits for personal injuries connected with the same. No assignment or transfer, etc., of the original lessee should release it from its obligations to erect the improvements costing not less than $40,000 under the lease, but said original lessee should remain a principal obligor to the landlord for the erection of said improvements.

Said lease further provided that upon the payment of 112 per cent of the value of the ground, it and all improvements thereon should become the property of the tenant. But if the tenant fail to pay said price, at or before the expiration of said term, the improvements should become the property of the landlord without any payment by the landlord therefor. And if the lease should be terminated otherwise by expiration of the term, then the buildings and improvements should belong to the landlord, without any payment therefor; and the tenant should not have the option to buy the said land as above provided.

On March 18, 1913, all the rights to the unexpired term and leasehold obtained from said Jenkins came to be owned, by mesne assignments in due and proper form, by John Taylor.

This left John Taylor owner in fee of Lot 26 aforesaid and also owner of the leasehold interests in and to the rest of said tract, namely, the south twenty-four feet of Lot 25 and all of Lot 27. In other words, he owned in fee lot 26 and was the owner and holder of long-term leases on the rest of the above-mentioned tract of 123 feet by 115½ feet at the northeast corner of 13th and Grand Avenue, on which the owners in fee and lessors in said lease required the erection of the improvements heretofore mentioned.

It is unnecessary to minutely trace the various assignments of the leasehold interests in the several parts of said tract of 123 feet by 115½ feet, further than to say that all three, including John Taylor's interests of both leaseholds and also a lease from him for ninety years

of lot 26, finally came into and was owned by the Grande Building Company, a corporation.

In Taylor's lease for ninety years for lot 26, which he owned in fee, and the assignment of his other two leaseholds, the same beginning in November, 1917, the contract therein called for a new building or buildings covering at least seventy-five per cent of the area of the land and costing not less than $250,000, "designed for office, theatre, hotel or mercantile purposes, or for all or part of such purposes combined," but "all buildings and improvements of whatsoever kind or character shall be paid for by the tenant without expense to, and without recourse of any kind against, the lessor or the lessor's property" and nothing was intended to "authorize or empower the tenant to create or cause to be created any lien, charge or encumbrance whatsoever against the lessor or the lessors' interest in said real estate;" but on the contrary, such right or power was expressly denied; and after completion of the above original building, the tenant should thereafter keep and maintain in good condition on the premises a building or buildings of actual construction costing not less, in any event, than $250,000. Nevertheless, no assignment or conveyance out of the original tenant should release the original tenant from his obligation to erect the original new building or buildings costing not less than $250,000. Further provisions were made calling for the payment of annual rentals of $5000 and $10,000; and in case of default or violation of the lease by the tenant, then the lessor, subject to notice, would be entitled to terminate all rights of the tenant under the lease and the rights of all persons claiming under them; and at the end of the term, all rights of the tenant and of all persons claiming under them will cease "and lessor will be entitled to complete surrender and possession thereof."

While the construction of the aforesaid steel reinforced concrete framework was going on, the rents due under the lease of the Kelley property (the south twenty-four feet of lot 25), and under the lease of the Jenkins property (lot 27) were paid up to the time of the cessation of work on the building by the Grande Building Company and up to December 19, 1929. On that date it assigned or surrendered its leasehold interest in the ninety-year lease it got from Taylor, and gave up possession of the entire leased premises, to those owning the estate of John Taylor, deceased, namely, his heirs, devisees and trustees under his will.

The petition in said equitable mechanic's lien suit was duly filed May 14, 1929, and all defendants were duly brought into court, but as only the defendant Thomas L. Dawson, lien-claimant, has appealed, we need take no notice of any others. He filed an answer and intervening petition, setting up his occupation in the heating, ventilating and plumbing business in Kansas City; and, after stating

the ownership of all of the various lots heretofore mentioned, further alleged that on June 20, 1928, he entered into a contract with the Grande Building Company wherein he agreed to provide the material and perform the work for the plumbing, heating and ventilation in an office building being erected at the northeast corner of 13th and Grand Avenue in Kansas City, Missouri, situated upon the real estate above described, for which the defendant Grande Building Company agreed to pay to Dawson the total sum of $43,600; that said contract was made by the Grande Building Company on its behalf and as agent for the owners of the fee title to the above described real estate, fully authorized and empowered to act, and was acting as agent, for said fee owners under and by virtue of the obligations and requirements placed upon said Grande Building Company by virtue of the three original leases and the assignments above mentioned, for the erection of the improvements on said premises, and by reason of the mesne extensions, conveyances and assignments heretofore referred to, said Grande Building Company assumed the obligations and requirements to erect said improvements and became the agent of all said owners of the fee with full power and authority to bind the ownership, title and interest to all of the parties in and to said real estate for the erection of the improvements being erected or to be erected, on said premises.

That said Grande Building Company began the erection of permanent improvements on the aforesaid real estate in the nature of a concrete steel brick and office building, located on said property, at the northeast corner of 13th and Grand Avenue; that said lots and parcels are contiguous and adjoining; that said improvements were and are beneficial to the reversionary interests of the above named fee owners of said real property and beneficial to said fee owners in that the value of their security for the payment of rent was increased.

Said lien-claimant, in his answer and intervening petition further set up that:—

"Following the execution of the contract between himself and the defendant, Grande Building Company, above referred to, he began to furnish material and perform work on said building; that on and between the dates of June 27, 1928, and August 1, 1928, both inclusive, this defendant furnished materials and work to the reasonable aggregate value of $4,104.82; that payments have been made this defendant and credits allowed in the total amount of $1500; that an itemized statement of account showing the work done and material furnished, the date when each item was delivered with the reasonable value thereof with the credits allowed thereon, is attached hereto marked Exhibit 'A' and made a part of this answer and intervening petition by reference; that there is due this defendant on said account, after allowing all just credits and offsets, the sum of $2604.82;

that said balance was due and demand was made for the payment thereof on September 1, 1928, but the same is yet due and unpaid.

"This defendant further states that all of said labor and materials as itemized in said Exhibit 'A' hereto attached, were furnished and delivered under a contract with the defendant, Grande Building Company, acting in its own behalf and as agent for the above named owners of fee title in the above described property, and were delivered for the purpose of erecting permanent improvements on the above described real property and sold and delivered by this defendant relying upon the building and improvements and the fee titles and leasehold interests in said real property as security for the payment therefor; that all of said labor and materials were actually used on the construction of permanent improvements on said real property in the nature of a brick, steel and concrete office and connecting garage building and were all delivered and performed under one general contract and as one running account, the first item being furnished on June 27, 1928, and the last item of which was delivered on August 1, 1928.

"This defendant further states that within six months from the date of August 1, 1928, when the last item of said account was furnished and delivered, to-wit, on January 31, 1928 (1929), he filed in the office of the clerk of the Circuit Court of Jackson County, Missouri at Kansas City, his verified statement for a mechanic's lien upon the above described property; that a copy of said lien statement is hereto attached marked exhibit 'B' and made a part of this answer and intervening petition by reference.

"This defendant further states that within ninety days after filing of said mechanic's lien statement in the office of the clerk of the Circuit Court of Jackson County, Missouri, to-wit, on April 29, 1929, he filed an action to enforce a lien on the above described real property, leasehold and improvements, said action being in the Circuit Court of Jackson County, Missouri at Kansas City, No. 295272, entitled Thomas L. Dawson doing business as *Thomas L. Dawson Company v. Grande Building Company et al.*

"This defendant further states that he files this answer and cross petition after being served with summons herein and within the time required by law on said summons."

Wherefore, judgment was prayed "in the sum of $2804.82, with interest at the rate of six per cent per annum from September 1, 1928, together with his costs herein and further prays that said judgment be adjudged and decreed by the court to be a first, best and subsisting lien in and upon lots 16, 17, 18, 27, 26 and the south twenty-four feet of Lot 25, in Block 2, McGee's Addition, an addition in and to Kansas City, Jackson County, Missouri, and in and upon all of the ownership, right, title and interest of the defendant, Grande

Building Company, in and to the above described real property, together with all buildings and improvements located on said real property; that said lien be declared to be senior and superior to the claims of each and all the above named plaintiff and defendants and that in the event said judgment be not collected from the defendant, Grande Building Company, that the said real property, together with the improvements thereon, and the ownership, right, title and interest of the Grande Building Company, be sold under special execution to satisfy the lien of said judgment and that this defendant have such other and further relief as to the court may seem just and proper.''

The defendants, the heirs and the trustees interested in the estate of John Taylor, deceased, the defendant, Martin P. Kelley, the defendants, the Jenkins heirs, and Wallace N. Robinson, filed a second amended separate answer in which were set out the various titles in fee, the leasehold interests in and to the lots hereinbefore mentioned, the different violations of the leases, the defaults and failure to pay rent whereby the Grande Building Company surrendered its rights it held under them and also the violations and defaults of said Wallace N. Robinson in the lease from Taylor to him, by virtue of which the leasehold interests in the lots affected thereby were surrendered and delivered to the said Taylor heirs and the Taylor trustees.

Said amended separate answer also set up a number of matters as defenses whereby it is claimed the mechanic's lien sought to be enforced by appellant Dawson is illegal and void, and by reason thereof they ask that said mechanic's lien be denied. If the defenses named required special attention, they will be discussed further on in this opinion.

The separate amended answer of the Jenkins heirs consisted of a general denial, and it then set up that they owned the fee of lot 27; that the improvements for which the lien is claimed are not complete but mere partial constructions of no value to the lands, not practical nor usable; and then was set up the same or similar contentions as to the validity of the lien as contained in the other and above-mentioned separate answer.

Appellant filed a reply wherein certain things were admitted and others denied, but as they are not deemed necessary to be particularly specified in order to decide the real questions discussed and involved herein, they are not stated, at least at this time.

The reply further set up that:—

''Said Grande Building Company began the construction of the building now partially constructed thereon, after the time named in said leases and spent large sums of money in the erection thereof, and obligated itself to pay to the plaintiff and the intervening mechanic's lien claimants herein, including this defendant and intervenor, large sums for materials furnished by them, and work and

labor performed by them, all used in the construction of said' building now on said premises; that at all times while said building was being constructed, the defendants knew that said Grande Building Company was erecting said building and was incurring said obligations for said labor and materials furnished and used in the construction of said building, and that mechanic's lien rights were accruing to the plaintiff and said intervening mechanic's lien claimants herein for said materials and labors furnished and performed by them and used in the construction of said building; that none of said defendants objected to the erection of said building, and the incurring of said obligations, but that with full knowledge thereof, as aforesaid, and by reason thereof, they acquiesced in the construction of said building and the incurring of said obligations for said labor and materials, and waived their right to object to the making of said improvements and incurring of said obligations after the time named in said lessee (lease), and are therefore estopped from asserting strict performance of the terms of said leases respecting the character of the building to be erected upon said lands and the time therein named for erecting improvements thereon, and waived their rights to object to the plaintiff and the intervening mechanics' lien claimants herein, including this defendant and intervenor, to mechanics' lien judgment against the fee title and the leasehold interests in said lands and said building partially erected thereon.''

At the May term, June 6, 1932, the trial court, for good cause shown and on motion of parties hereto, appointed William B. Dickinson of the Jackson County Bar as referee to take testimony and report on all issues of law and fact and report his conclusions thereon; and at the March term, March 15, 1933, he filed his report.

The referee's report found the ownership and title to the fee of the three portions of said tract, heretofore referred to in this opinion as the 123 feet by 115½ feet at the northeast corner of 13th and Grand Avenue, to be as hereinbefore stated, as well as the several original leases and the requirements concerning the erection of the improvements therein called for and the extensions therefor; and especially found that the provisions requiring that said buildings and improvements called for are to be paid for by the tenant without expense to, or recourse of any kind against, the lessor or the lessor's property, and also especially noting the provision forbidding and expressly denying the creation of any lien against the interest of each lessor in said real estate or any portion thereof and the other provisions hereinbefore noticed herein intended to protect and hedge about the interest of the landlords while at the same time securing to them the enforcement of the right to insist upon the erection of the original new building or buildings to cost not less than the price hereinabove specified and required.

The referee further reported the provision that the rights and obligations of the respective parties should, subject to the provisions of the lease, "accrue to them and to their respective successors, heirs, executors, administrators and assigns;" and that all covenants, agreements and engagements should be construed as covenants "running with the land, and as accruing to and binding upon the heirs, devisees, executors, grantees, assigns and successors of the lessor and of the lessee respectively."

The referee's report also says there is no evidence that Martin P. Kelley or Andrew Paul Jenkins or his successor in title, or of John Taylor or his successors in title, said or did anything to modify or waive any provision of any of said leases after the execution of the respective extensions of time in which to make improvements under the Kelley and Jenkins leases, "except that all of said lessors received payment of rent as hereinbefore stated."

The referee further found that the Grande Building Company entered into a contract with lien-claimant (now appellant), Thomas L. Dawson, wherein the latter was to provide the material and do the work for the plumbing, heating and ventilating in the Grande Office Building as hereinabove mentioned and referred to; that he commenced work June 27, 1928, and went as far with that contract as the construction of the building would permit; that he furnished material and labor itemized in his mechanic's lien account of the reasonable value of $4,104.82; that the last item of said account was furnished and installed between August 1, and August 17, 1928; that $1500 was paid on said account, and that the balance due thereon was $2604.82 on September 21, 1928; that thereupon said claimant demanded payment of the total balance due, but no part of which has ever been paid.

That said Dawson's mechanic's lien-claim was duly filed on January 31, 1929, in all respects in due and regular form; that there is included in the itemized account items of street excavation and for sewer and water connections on the streets and not on the property in question, that the $1500 was paid in cash on said account, without particular designation, and the referee applied the payment made to such items; that on April 29, 1929, and within due time, said lien-claimant filed his petition on said mechanic's lien and thereafter, on September 11, 1929, said claimant filed in this equitable mechanic's suit, his answer and intervening petition.

The referee then concludes with reference to appellant's claims as follows:

"I find that the lien claim and suit thereon was duly and timely filed; that the contract was duly made; that the price was reasonable; that said claimant complied therewith so far as the building progressed, and was able, ready and willing to fully comply; and that the

account is a just and true account, and that claimant relied upon his right to a mechanic's lien; and that he knew that the Grande Building Company held under leases; and that he never consulted the fee owners about anything.

"As conclusions of law from the foregoing facts, I find that defendant Thomas L. Dawson is entitled to a personal judgment against Grande Building Company, and O. O. Concannon, as trustee, Meldon L. Glenn as trustee, and Jules H. Kohn as trustee (statutory trustees for said company), for the sum of $2,604.82 with interest from September 31 (30), 1928, at six per cent per annum, and for his costs herein expended, and to have such claim and judgment to be a special mechanic's lien against the structure located on lots 27, 26 and on the south twenty-four feet of lot 25, together with such additional part, if any, as may be within lessor's control under the Kelley lease, all located in Block 2, McGee's addition, an addition in and to Kansas City, Jackson County, Missouri, and against all of the right, title and interest of the Grande Building Company and its trustees in and to the lots and land last above described under the lease above described from John Taylor to Wallace N. Robinson."

The referee further reported:

"As conclusions of law from the foregoing facts I find that the defendants Gertrude R. Taylor, Albert Allen Taylor, John Taylor, Jr., Harold K. Taylor, Ruth C. DeGarmo, Olivia Griffin and Grant I. Rosenzweig, all as trustees and as fee owners, are the owners in fee simple of Lots 16, 17, 18 and 26, Block 2, McGee's Addition, an addition in and to Kansas City, Jackson County, Missouri, and of the leasehold under the Kelley lease and the leasehold under the' Jenkins lease; that said Kelley and Jenkins leases are in full force and effect, subject to extensions, assignments and modifications thereof of any record, and that said leasehold interests are now owned and held by said person and/or John Taylor Dry Goods Company; that said Taylor-to-Robinson lease has been duly and fully surrendered to said persons except that the liens hereinbefore allowed were allowed against the structure located on Lots 27, 26 and the South twenty-four feet of lot 25, and the interest, if any, of Martin P. Kelley in the remainder of the South half of said Lot 25, and against all of the right, title and interest of the Grande Building Company, and its trustees in and to the lands last above described under the lease above described from John Taylor to Wallace N. Robinson, and said lienors are entitled to execution therefor against said structure and the interest of Grande Building Company only, and the purchaser at said execution sale will be entitled to said structure and/ or said leasehold subject to the obligations thereof, or to remove said structure therefrom within a reasonable time after said sale; that all

mechanic's liens are denied as against any other or further interest in or concerning any of said lots or lands; . . ."

"As conclusions of law from the foregoing facts I find that defendant Martin P. Kelley is the owner of the fee simple title to the South twenty-four feet of Lot 25, and such right as Martin P. Kelley may have in the balance of the South twenty-five feet of said lot, all in Block 2, McGee's Addition, an addition in and to Kansas City, Jackson County, Missouri; that his fee simple title is subject to the lease dated March 13, 1909, filed for record April 14, 1909, and recorded in Book B-1173 at Page 459 in the deed records of Jackson County, Missouri, at Kansas City; that said lease is in full force and effect, and subject only to extensions, assignments and modifications thereof, if any, of record; that all mechanic's liens hereinbefore mentioned attach to the structure thereon, but do not attach to or in any manner encumber the fee simple title to said land in Martin P. Kelley."

"As conclusions of law from the foregoing facts I find that defendants Theresa A. Jenkins, Louise Jenkins, and William B. Jenkins are the owners of the fee simple title to Lot 27, Block 2, McGee's Addition, an addition in and to Kansas City, Jackson County, Missouri; that their fee simple title is subject to the lease dated February 15, 1909, and recorded in Book B-1207 at Page 266 in the deed records of Jackson County, Missouri, at Kansas City; that said lease is in full force and effect, and subject only to extensions, assignments and modifications, if any, of record; that all mechanic's liens hereinbefore mentioned attach to the structure thereon, but do not attach to or in any manner encumber the fee simple title to said land in said Theresa A. Jenkins, Louise Jenkins and William B. Jenkins."

Exceptions to the report were filed and afterward all of them were overruled, and the court rendered judgments disposing of the various lien-claims, that in regard to appellant Thomas L. Dawson being as follows:

"The defendant Thomas L. Dawson is entitled to a personal judgment against Grande Building Company and O. O. Concannon as trustee, Meldon L. Glenn as trustee, and Jules E. Kohn as trustee, for the sum of Three Thousand Three Hundred Seventy Three and 24/100 ($3,373.24) Dollars, and it is ordered, adjudged and decreed that said Thomas L. Dawson have and recover of and from the Grande Building Company, O. O. Concannon as trustee, Meldon L. Glenn as trustee, and Jules E. Kohn as trustee, said sum of Three Thousand Three Hundred Seventy Three and 24/100 ($3,373.24) Dollars, with interest from September 1, 1933, at six per cent per annum, and for his costs in this behalf expended, and that execution issue therefor, and that said judgment and interest, and the costs applicable thereto be and the same is hereby established as a special lien upon and against the structure now on said Lots 27, 26 and the South

twenty-four feet of Lot 25, together with such additional part, if any, of said Lot 25 as may be within lessor's control under the Kelley lease, all located in Block 2, McGee's Addition, an addition in and to Kansas City, Jackson County, Missouri, and against all of the right, title and interest of Grande Building Company and its trustees in and to the lots and land last above described under the lease above described from John Taylor to Wallace N. Robinson.''

The court also rendered judgment that:

''The defendant Martin P. Kelley is the owner of the fee simple title to the South twenty-four feet of Lot 25, and such right as Martin P. Kelley may have in the balance of the South twenty-five feet of said lot, all in Block 2, McGee's Addition, an addition in and to Kansas City, Jackson County, Missouri; that his fee simple title is subject to the lease dated March 13, 1909, filed for record April 14, 1909, and recorded in Book B-1173 at page 459 in the deed records of Jackson County, Missouri, at Kansas City; that said lease is in full force and effect, and subject only to extensions, assignments and modifications thereof, if any, of record; that all mechanic's liens hereinbefore mentioned attach to the structure thereon, but do not attach to or in any manner encumber the fee simple title to said land in Martin P. Kelley.''

''The defendants Gertrude R. Taylor, Albert Allen Taylor, John Taylor, Jr., Harold K. Taylor, Ruth C. DeGarmo, Olivia Griffin and Grant I. Rosenzweig, all as trustees and as fee owners, are the owners in fee simple of Lots 16, 17, 18 and 26, Block 2, McGee's Addition, an addition in and to Kansas City, Jackson County, Missouri, and of the leasehold under the Kelley lease and the leasehold under the Jenkins lease; that said Kelley and Jenkins leases are in full force and effect, subject to extensions, assignments and modifications thereof, if any, of record, and that said leasehold interests are now owned and held by said persons and/or John Taylor Dry Goods Company; that the Taylor-to-Robinson lease mentioned in the Referee's Report has been duly and fully surrendered to said persons except that the liens hereinbefore allowed were allowed against the structure located on Lots 27, 26 and the South twenty-four feet of Lot 25, and the interest, if any, of Martin P. Kelley in the remainder of the South half of said Lot 25, and against all of the right, title and interest of the Grande Building Company, and its trustees in and to the lands last above described under the lease above described from John Taylor to Wallace N. Robinson, and said lienors are entitled to execution therefor against said structure and the interest of Grande Building Company only, and the purchaser at said execution sale will be entitled to said structure and/or said leasehold subject to the obligations thereof, or to remove said structure therefrom within a reasonable time after said sale;''

"The defendants Theresa A. Jenkins, Louise Jenkins, and William B. Jenkins are the owners of the fee simple title to Lot 27, Block 2, McGee's Addition, an addition in and to Kansas City, Jackson County, Missouri; that their fee simple title is subject to the lease dated February 15, 1909, and recorded in Book B-1207 at Page 266 in the deed records of Jackson County, Missouri, at Kansas City; that said lease is in full force and effect, and subject only to extensions, assignments and modifications, if any, of record; that all mechanic's liens hereinbefore mentioned attach to the structure thereon, but do not attach to or in any manner encumber the fee simple title to said land in said Theresa A. Jenkins, Louise Jenkins, and William B. Jenkins."

Said judgment further provided that if the Grande Building Company or the trustees representing it, fail to pay, within the time fixed, the various amounts specified, then the aforesaid structure on the south twenty-four feet of lot 25, together with such additional part, if any, as may be within lessor's control under the Kelley lease, and lots 26 and 27 of Block 2, in McGee's Addition, and all right, title and interest of Grande Building Company and its trustees in and to the lots and land last above described under the lease from John Taylor to Wallace N. Robinson, and in the real estate upon which the same (said structure) is situate, should be sold at public vendue for cash by William B. Dickinson, appointed Special Commissioner for that purpose, under certain terms and conditions in the decree specified. It was further provided that the said structure, and all of the interest of the Grande Building Company, and its statutory trustees, should be sold first and separately from the real estate (meaning doubtless the leasehold interests therein). If the proceeds of said sale be equal to or more than the costs, charges and allowances made, and to be made and incurred, in the cause, then said real estate should not be sold, but if not, then so much of said real estate should be sold as is required to pay them. Jurisdiction was retained to make such further orders from time to time and from term to term as may be necessary.

As heretofore stated, defendant lien-claimant, Thomas L. Dawson, appealed.

After the above, perhaps unnecessarily long, statement of the case, it is to be observed that appellant Dawson is given a lien on the three-story steel reinforced concrete framework structure alone, but not upon the real estate itself, though perhaps the lien may be also on some of the leasehold interests existing therein or thereon. Just what particular benefit will or may accrue to the appellant who has furnished and installed in proper place the immense, ponderous boilers' for the heating plant of the structure resting upon said real estate is somewhat difficult to foresee, if his lien is permitted to extend only to the three-story framework itself, and he could separate it from

the ground and take it, and the solidly attached boilers, away from there, it would require the expenditure of a large sum of money and much labor, and when this was done, the value of what he had left on his hands would be problematical and extremely doubtful. If his lien be applicable, not only to the structure merely, but to a leasehold interest in the land, then for him to secure any value from it would require his engagement in a new and untried business other than that in which he is now engaged and the investment of an additional and immense sum of money for which he is, and can be, in no wise prepared. Consequently, whatever the limited lien that may be given him under the decree as rendered, will prove to be like an apple of Sodom turning to dust and nothingness in his hands.

There is no evidence that what he furnished and supplied and put in place, was not properly and thoroughly done. He put full value into it, completed it so far as it (the structure) has gone, and he is in no wise responsible or to blame for the cessation of the work on the structure or the inability of the company that began it, to carry it on to completion. Each of the owners in fee, in the long-term leases, required the lessees, or their succeeding assignees, to erect on the land permanent and costly improvements in the way of buildings thereon which would unquestionably add to the income-producing power, as well as to the permanent value of their property; and so desirous were they that such should be done that extensions of time were granted to enable the holders of the leasehold terms to do this, while the fee owners continued to recognize the aforesaid leaseholds by accepting the rents due thereunder and refraining from terminating said leases, at least until long after appellant lien-claimant had furnished his material and done his work, and until the company owning the long-time leasehold on the entire tract on which the aforesaid structure stood, had found itself (owing to conditions which neither it, nor anyone else, could foresee), "unable to complete" the building which had been undertaken.

It is true the said fee owners requiring the lessees to erect the improvements on their land, carefully specified therein that they should not be affected with, or require to pay, any lien arising therefrom; but such provisions, while perhaps good as between themselves and the lessees, ought not to be held binding upon a well-meaning and faithful third party who did not sign said restricting and protective provisions; and whose right to a lien does not grow out of any such provisions, but is given by the *statute* when its terms have been complied with.

It would seem, therefore, that since this is an equitable mechanic's lien suit, the whole matter should be equitably construed, and appellant's lien herein sought should be upheld to its fullest extent, unless there is something that clearly and unquestionably in the law for-

bids it. Appellant contends that the fee owners and lessors, who by their leases require these lessees to make improvements on the leased property, constitutes such lessees and assigns, the agents of lessors to bind the fee in the property with a mechanic's lien for the cost of the work and materials supplied and used in such improvements. If so, it is not necessary, in order to establish such a lien, that the lien-claimant prove a written, express contract issuing directly from the fee owners to the lien-claimant.

It is held in Allen Estate Association v. Fred Boeke & Son, 300 Mo. 575, that the owner of the fee, notwithstanding it had made a ninety-nine-year lease of the property to a company, and had made no contract for the improvement to be made, but on the contrary, had a provision in its lease that the lessor was not to be liable therefor, nevertheless the fee was held subject to the lien sought.

The court, on page 586 of said report, quotes section 7216, Revised Statutes Missouri 1919 (now section 3156, Revised Statutes Missouri 1929), (7 Mo. St. Ann., p. 4972), which provides that "Every mechanic or other person who shall . . . do any work . . . or furnish any material, fixtures, engine, boiler or machinery, for any building, erection or improvements upon land . . . . under and by virtue of any contract with the owner or proprietor thereof, or his agent . . . upon complying with the provisions of this article, shall have for his work or labor done, or materials, fixtures, engine, boiler or machinery furnished, a lien upon such building, erection or improvements and upon the land belonging to such owner or proprietor on which the same are situated . . .; or if such building, erection or improvement be upon any lot of land in any . . . city . . . then such lien shall be upon such building, erection or improvements and the lot or land upon which the same are situated to secure the payment" for same.

The court, on the same page, denominates as "technical" the reliance for support on the fee owner's contention that there must be a direct and express contract from the fee owner, to support a lien. And on page 587, the court further say:

"Whether therefore the appellant seeks through a reliance upon the words of the statute, or such a construction of the lease between the Ottawa Realty Company and the Allen Estate Association as will render the latter immune from the imposition of mechanic's liens upon its property by the respondents, must in the interest of right and justice, free from technical quibbles and finely drawn definitions of terms, depend upon a wholesome interpretation of the facts disclosed by the record. It may be conceded that such a connection as is contemplated by the statute (section 7216) must be shown to exist between the lessor and the lessee to create the lien involved. While the lease should, if such connection exists, sufficiently disclose the lessor's

finger prints on same, it is not upon this instrument alone, however, but to all the facts connected with the transaction that we may look in determining whether a connection in the nature of an agency exists between the parties and as a consequence the right of the respondents to the liens.''

And in final result the judgment of the trial court sustaining a lien against the owner of the fee was affirmed. [See, also, Winslow Brothers Co. v. McCully, etc., Co., 169 Mo. 236; Dierks & Sons Lumber Co. v. Morris, 170 Mo. App. 212; Sec. 3156, R. S. Mo. 1929, 7 Mo. St. Ann., p. 4972; Curtin-Clark Hardware Co. v. Churchill, 126 Mo. App. 462; Dougherty-Moss Lumber Co. v. Churchill, 114 Mo. App. 578; Ward v. Nolde et al., 259 Mo. 285; Weis, etc., Marble Co. v. Gardiner & Rossi, 198 Mo. App. 35; Hydraulic Press Brick Co. v. Winn Construction Co., 219 S. W. 681.] It is manifest from at least two of the foregoing authorities, the Boeke & Son case and the Morris case, that if a fee owner and lessor requires in the lease the lessee to make permanent and substantial improvements on the property, he cannot defeat the lien created by the law in favor of the one who supplies the material and does the work therefor, by inserting a provision in the lease that he is not to have his property subjected to any such lien.

In a brief in behalf of the Taylor group of fee owners and perhaps another fee owner group, point seems to be made that the appellant's record is insufficient in that his abstract of the record proper does not set forth the judgment rendered by the trial court, and says: ''This in itself would be fatal to the appeal, *if insisted upon*.'' However, we are justified in concluding that, notwithstanding decisions are cited in support of the point, and a short criticism made of the record in this and other particulars, such are not insisted upon, since the brief, on that feature, ends with the statement:.

''We do not, however, insist upon or even desire to take advantage of mere oversights on the part of most highly esteemed counsel—preferring that the beautiful subject matter of this case be considered upon its merits.''

It may be observed, however, that the judgment *is* shown in the appellant's abstract, although it may be in the place usually devoted to matters of exception. If so, it is properly covered by the last paragraph of our Rule 15 as it now exists. Again, the judgment, set forth in full, is shown in the certified copy signed by the circuit clerk and duly filed in the appellate court, and we can look to and examine it for anything appearing in said judgment. Under no view, therefore, can the appeal be disregarded or dismissed on account of any defect in appellant's record.

Going back to the discussion of the liability of the fee to a lien created through a contract made by the lienor with a lessee con-

stituting the latter an implied agent of the fee owner, it should be remembered the Mechanic's Lien Law should be liberally construed. [Cooper Supply Co. v. Rolla Nat'l Binding Co., 66 S. W. (2d) 591, 595.] Section 3156 is highly remedial in its nature and should receive a liberal construction. [Hicks v. Schofield, 121 Mo. 381; DeWitt v. Smith, 63 Mo. 263; St. Louis Concrete Products Co. v. Walker, 64 S. W. (2d) 131.] The owner of the land may contract through an agent and such agency may be expressed or implied; and even the doctrine of an *undisclosed principal* applies to mechanic's lien contracts. [Winslow, etc., v. McCully, etc., Co., supra.] Nor can the right to a lien be prevented or destroyed by a provision in the lease from the fee owner to lessees that the latter shall make the improvements at their own cost and protect the owners of the fee against liens. [Curtin Co. v. Churchill, supra.] In Powell v. Reidlinger, 228 S. W. 500, 504, a case where the improvements for which a lien was claimed were made at request of lessee but without the consent, authority or approval of the lessor (owner of the fee), it was held by the Supreme Court that the lien-claimant's action was founded upon section 7216, Revised Statutes Missouri 1919 (now section 3156, Revised Statutes Missouri 1929) and not upon section 8216, Revised Statutes Missouri 1909 (now section 3160, Revised Statutes Missouri 1929, 7 Mo. St. Ann., p. 4984), the court saying that: "The courts in construing section 8212 (now section 3156), supra, have held that where the lessor, as at bar, contracts with the lessee for the making of certain improvements of substantial benefit to the estate of the lessor upon the termination or surrender of the lease, such terms *constitute* the lessee the agent of the lessor *within the meaning of the mechanic's lien law* and subject the lessor's property to a lien for the labor performed and the materials furnished for such improvements under a contract with the lessee," (emphasis ours), citing most of the cases hereinabove cited. The case was transferred to the St. Louis Court of Appeals and there decided (234 S. W. 850), where it was held that the claimant's lien could not be upheld under the evidence since there was *nothing* tending to show "that the tenants were obligated under the lease in question or by any contract with the landlord" to install the improvements, the *most* that could be said that the owner of the fee made no objection and merely *impliedly* gave consent thereto. It is clear, therefore, that whether, in a given case, a lien can be successfully asserted by a claimant-contractor against the owner of the fee by virtue of a lessee rightfully being regarded as the fee owner's agent in authorizing the improvement, must depend upon the facts in each case and upon which an equitable construction can be put upon the evidence in a broad and reasonable view considering the rights and situation of both the owners in fee and the holder of the leasehold interest, in the light of the rights, under the statute, of the lien-

claimant who has supplied the material and labor for the erection or improvement placed on the land. It, of course, must be recognized that although the Mechanic's Lien Law is to be liberally construed, the rights conferred by it are statutory, and its substantial requirements must be met. [Planing Mill, etc., Construction Co. v. Krebs, 196 Mo. App. 432.] This last, however, merely means that the lien-claimant must show compliance with the requirements of the lien law the same as in any other suit for the enforcement of a mechanic's lien.

Having stated the general theory on which appellant's claim for a lien suit rests, it is now in order to consider the various points relied upon by the several fee owners as grounds to defeat appellant's lien.

Some of the "Points and Authorities" raised in the brief in behalf of the aforesaid groups of fee owners and lessors, but presented particularly in the brief for the so-called Taylor heirs, are not stated with sufficiently definite precision to clearly show wherein the alleged defect or fault in appellant's right to a lien is claimed to consist, or to point out the matter complained of and call for a ruling thereon.

It is well settled that we are not required to carefully search the record or spend time to discover wherein points so ambiguous or so hidden in generalities, as to make it difficult and uncertain as to where or what application is to be made, or to pass upon them. For instance, a point couched in such general terms as "Lien right is not sacred but may be waived in countless ways" is not sufficiently specific to call our attention to what is referred to or meant. Such a point, if raised by an *appellant*, is valueless and the appellate court will not search to discover it. [McPherson v. Lumbermen's Supply Co., 211 Mo. App. 385, 394; Coombs v. Tschudy, etc., Lumber Co., 197 S. W. 342, 343.] It may be that a point made in this puzzling and enigmatic way by a *respondent* should not be so treated, and if the court can by careful search and investigation, as well as natural astuteness, discover and apply the point raised in opposition to the validity of appellant's lien, that should be done, especially if it may prevent the sought-for lien from receiving the appellate court's approval. We pause to say that we have made such search, including an investigation of the cases cited, and have used such acuteness and ability as nature and the controlling power have endowed us, but have been unable to see wherein appellant in this case has lost any right to a lien *by waiver*. Waiver is essentially a matter of intention and may be shown by acts and conduct and sometimes by non-action, but for such to be construed as waivers, they must be manifestly consistent with, and indicative of, an intention to waive or to relinquish the right, that no other reasonable explanation is possible; and waiver must be determined by the facts and circumstances of each case and

will not be presumed in the absence of evidence clearly tending to show it. [Langdon v. Kleeman, 278 Mo. 236.]

The same observations apply with equal force to Point 2 headed "Recorded Instruments in Chain of Title are Binding." No doubt they are, generally speaking, but just how the point is applicable to the points involved in this case is not apparent, and no attempt is made in the brief to reveal its applicability. It may be that this is an attempted presentation in another form of the point that since the lessors placed a provision in each of the leases that lessors should not have their property subjected to the lien for the improvement each lessor desired, and required the lessee, to erect at his own expense, no lien can be secured. If so, it is thought that this matter is already answered hereinabove.

Said respondents in their point 5 urge that the expiration of the time in which the building requirement is stated eliminates the requirement altogether. There is nothing to that effect in any of said leases. Indeed, the extensions of time granted before the expiration of the time first stated show that lessors preferred the building to be erected rather than to attempt to forfeit the lease. Other provisions in the lease show that the parties intended, and in fact understood, that the obligation to erect the improvements was a continuing one and this was further expressed when the lessee was required to keep and maintain the building representing in the amount of the cost thereof a permanent and substantial structure, and the obligation continues throughout the full term of the lease. When, in addition to this, we find no assertion of any forfeiture right on the part of the lessors, but on the contrary the quiet acceptance of the rent long after the expiration of the time mentioned, and after the erection of such improvements has begun, we do not see how lessors can, under such circumstances, claim that the requirements of such improvements has been eliminated so that lessee's attempt to erect the same is void, and that a third party, appellant for instance, who has supplied the work and material and installed the improvements placed in position, without fault on his part, and to the fullest extent possible, is to be denied his lien on the ground now urged and considered. [36 C. J., sec. 792, p. 160; Garnhart v. Finney, 40 Mo. 339; Powers Shoe Co. v. The Odd Fellows Hall Co., 133 Mo. App. 229; Beery v. Cobb, 20 S. W. (2d) 296; Gates v. Steckel, 176 Mo. App. 168; D'Anna v. Rupp, 32 S. W. (2d) 136.]

The fact that, owing to things for which neither the lessee nor the lien-claimant (certainly and unquestionably the latter), can be blamed, the erection of the building ceased after the installation and putting in place of the improvements for which the lien is sought, can have no result in defeating such lien. [40 C. J., secs. 322, 323, page 261; Carroll Contracting Co. v. Newsome, 201 Mo. App. 117, 133; Kelly v.

Rowane, 33 Mo. App. 440; Austin-Clark Hardware Co. v. Churchill, 126 Mo. App. 462.]

There is no claim or showing that the work or materials or installment of the boilers by appellant are lacking in any respect or not well done. Indeed, the steel, reinforced concrete, framework is good as far as it goes, and can be used in the carrying on to completion of the proposed building in accordance with the original plans or can be completed in a modified form. It is shown that the framework will not deteriorate or be injured by exposure to the elements, that the steel will not rust for the reason that it is enclosed by concrete; and it is apparent that said structure thus far erected can be used and is of value to the land on which it stands. The evidence of one witness that the improvements are of "no particular" to the land on which it stands apparently refers to the steel, reinforced concrete, structure and not to the Kewanee boilers, but whatever is referred to, no *facts* are stated on which such bare conclusion is reached that the improvement, for which the lien is sought, is of no value. And from the wording of the judgment it is clear that neither the referee, nor the judgment, expressly states that the improvement adds no value to the land, but the refusal to grant a lien is because the court thinks that, as a matter of law, the clause in the lease providing that the lessor's land is not to be made subject to a lien, and therefore, this is the reason for the refusal to allow said lien. So that, even if the appellate court cannot find a *fact* contrary to the finding of the trial court notwithstanding the case is in the nature of an equitable proceeding, still, it is possible for us to disagree with the trial court on a question of law which, as hereinbefore shown, is deemed to be incorrect.

In view of the long-time leases authorized in this case, and the fact that each lessor was exceedingly desirous of having valuable improvements erected and required the original lessees to do so, and permitted such leases to be assigned to other and subsequent lessees, who assumed and undertook said requirements, and the establishing of the boilers and appliances for the heating apparatus (for which the lien herein is sought) were to be for the use of the one, single, entire building erected on and covering all of said three contiguous tracts of real estate, and by a lessee that has acquired and owned all of said tracts, do not all of the foregoing facts present a case so peculiarly different from the cases apparently relied upon by the lessors and fee owners to support their contentions? Such, for example, is the case of Gruner Brothers Lumber Co. v. Jones, 71 Mo. App. 110, cited by them. In the first place, in that case there were two improvements to be made and two contracts entered into, and a lumber company sought a lien against two different owners of the two contiguous parcels of land involved, but apparently sought only

one lien for both improvements and did not keep a separate account of the materials devoted to the respective improvements, and the trial court upheld such a lien on both properties. The appellate court, on page 119 of said report (71 Mo. App.), held that the improvements in the Nelson lot, and the materials for them "were made and furnished by his consent and for his benefit. He not only consented to them but contracted with his lessees for them." Not so however with Haydel, the owner of the other tract. The section dealt with in that decision is section 6729, Revised Statutes Missouri 1889, now section 3189, Revised Statutes Missouri 1929 (7 Mo. St. Ann., p. 5015). The court, at page 121 of that case, says: "The statute is a remedial one. Its evident purpose is to give a lien upon the property, *en masse*, where work is done and material furnished in the construction of two or more buildings, or in making other improvements, upon contiguous lots, for the same owner and under one general contract." The court finally held the lien void as to Nelson, one of the owners. But the facts and circumstances are so entirely different from the facts in the case at bar, that said decision is not an authority to justify the refusal of the lien sought herein.

The separate brief in behalf of the Jenkins group of fee owners raises the same point, but in somewhat different form, that the lease made by them did not make the lessee their agent to erect the improvement called for, because the provision expressly denied any right to impose a lien and therefore refutes any relation of agency, especially in the Grande Building Company, and since the improvement in the case at bar was not erected by the original lessee of the Jenkins lot, the John Taylor Dry Goods Company, and that, even if it could be assumed that the last named company became such agent, it could not assign or delegate its duties or powers to the Grande Building Company for the reason that the relation of principal and agent is a personal one, and an agent may not delegate its authority unless he is authorized to do so, and cites Chouteau Land, etc., Co. v. Sherman, 204 Mo. 371, in support thereof. This is no doubt true as to agency in respect to other things than a mechanic's lien, or anything that no statute provides for, as is done in the agency asserted as the basis of appellant's claim in the cited case. In that case, the agency involved was an agency for the straight-out *sale* of a piece of land. Consequently, the cited case cannot be regarded as at all in point. The same may be said of other citations. And the said respondents in said last named brief, again reassert and return to the oft-raised point that the fact that the right to create a lien affecting the lessors is denied by their lease, prevents a lien coming into existence. This, as heretofore shown, has been passed on adversely to respondent's contention. The claim referred to on page 21 of the Jenkins lease as forbidding the erection of any building except as

stated, is not to be found in the Jenkins lease, but is found in one of the intermediate leases to a lessee in the line of assignment from Taylor finally to the Grande Building Company, but the character of the building is not so specified as to prevent the structure begun, or the Kewanee-type boilers and work in connection therewith, from being considered the kind of improvements authorized in the said other leases. And the fact that the Jenkins lease provided that no transfer or assignment of the original lessee would release the latter from its obligation to erect improvements costing *not less* than $40,000 cannot be construed as *limiting* the requirement of the lessor to the original lessee, so as to make the creation of the structure by the Grande Building Company *wholly unauthorized* by Jenkins and, therefore, exempt the Jenkins lot from the lien for the work and materials furnished by appellant and for which he now seeks a lien. We think the other provisions in the Jenkins lease, similar to the other leases, are sufficient to prevent them from asserting any difference in legal effect to those heretofore considered.

Finally, among the points raised by the brief, denominated "Brief for Taylors and others," is one entitled "Constitutional Rights." This would seem to be scarcely a statement of a proposition of law or a direct, unequivocal and unconditional challenge to the constitutionality of any statute. If a question has been raised as to the *construction* of any section of the Constitution, doubtless the sufficiency of the assignment of such point in the brief would be a matter for the Supreme Court to pass upon. We apprehend that, if the Constitution is invoked on the point that to hold that the provision in the leases of the owners, requiring the erection of improvements by the lessees but denying any lien-right created thereby, is sufficient to create the necessary agency relation, notwithstanding the express denial of the right to impose a lien, is a violation of the Constitution, such constitutional question has already been fully passed on and decided by the Supreme Court in the cases heretofore cited as upholding liens that have been attacked on the ground that same have been "expressly denied" in the leases. As we view it, the question raised involves the *application* of the Constitution and not the *construction* of said instrument. [Stegall v. American Register Co., 173 S. W. 674.] It would seem that, in briefing the points as if this court had jurisdiction and then mentioning the point under the head of "Constitutional Rights," litigants, at least subconsciously, realize that no real question of constitutional construction is involved, else that point would have been raised at the outset. A constitutional question, in the true and real sense, so as to put jurisdiction in the Supreme Court and deprive the Court of Appeals of jurisdiction, should not be postponed until after other questions have been raised requiring careful consideration and much labor to pass upon. Such

a question should be urged (and also presented) at the earliest possible moment that good pleading and orderly procedure will admit under the circumstances of a given case, otherwise it will be regarded as waived. [Williams v. Short, 263 S. W. 200.]

Other points are made by respondents which are claimed as sufficient to defeat appellant's lien. We have examined them but find they are not of vital importance or effect so as to destroy the right to a lien. Such, for example, is the contention that there are certain claimed defects in the incorporation of the Grande Building Company after a certificate of incorporation had been issued, in that no certificate of permission to *commence* business is shown. Where a claimant is otherwise entitled to a lien, it was not denied even though the charter of the corporation authorizing or calling the lien into existence had expired when the contract was made. [Automatic Sprinkler Co. v. Stephens et al., Receivers, Star Clothing Mfg. Co., 306 Mo. 518.] The so-called defect in the incorporation proceedings herein was nothing like so serious as that. The fact that the one who began the erection of the improvement, but after the lien-claimant has done his work and furnished the materials for which the lien is sought, the one who began such erection is financially unable to complete the building, will not defeat the lien for the work and material thus done and supplied. [Hydraulic Press Brick Co. v. Green et al., 177 Mo. App. 308.] The structure of which the boilers and heating plant are a part, even in its unfinished state, brings a rental of $500 a month and is therefore of present and immediate value; but even if it did not, the lienor is not to suffer for that.

It follows from what has been said that the lien-claimant, appellant herein, is entitled to his lien not only on the leasehold interest but also on the fee likewise. The judgment is therefore reversed and the cause remanded with directions to render judgment upholding the lien sought to the extent, and in accordance with, the holding herein. All concur.