**MAYER v. TEXAS TIRE & RUBBER CO. et al. (No. 9450.)**

(Court of Civil Appeals of Texas. Ft. Worth. May 22, 1920.)

**Landlord and tenant ⬅152(11)—Stipulation giving right to sublet carried right to make or permit changes; "alteration."**

Stipulation in lease according lessees right to sublet in part or whole, carried with it right of lessees to make or permit the making of such changes and additions in building as were reasonably necessary to its use by subtenants, provided changes did not constitute substantial change in structure, and could be removed at expiration of the lease without injury to building, "alteration," as applied to a building, meaning a substantial change.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Alteration.]

Appeal from District Court, Tarrant County; Ben M. Terrell, Judge.

Suit by Mrs. J. Mayer against the Texas Tire & Rubber Company and others. From order and judgment dissolving temporary injunction issued ex parte, plaintiff appeals. Affirmed.

Wray & Mayer, of Ft. Worth, for appellant. Baskin, Dodge & Mueller, for appellees.

BUCK, J. This is an appeal from an order and judgment of the district court dissolving a temporary injunction issued ex parte against J. E. Gill and the Texas Tire & Rubber Company, restraining them from making certain alleged alterations in a building' owned by Mrs. Mayer, located on the corner of Third and Houston streets, city of Ft. Worth, which she had rented to said Gill and others in April, 1918. The lease contract provided, among other things, that—

"No alterations shall be made in said premises without the consent of the said lessor or her agents."

Plaintiff alleged that in violation of this provision of said lease the defendants had made, and were making at time of the filing of the suit, alterations in said building; that said building is 25 feet north and south fronting on Houston street, and about 95 feet east and west; that said room has been divided and a partition erected from the north wall to the south wall of said building; that defendants were attempting to make other alterations, having erected uprights from the center of the aforesaid partition to attach another partition running easterly to nearly the front of said premises; that in the front at the entrance is a sort of vestibule; that in the ceiling of the vestibule there has been cut a large hole, and an upright placed through the hole to the front of the building, evidently done for the purpose of dividing the space east of the completed partition into two rooms; that plaintiff has been informed that it is the intention of defendants to change the plumbing on said premises; that neither plaintiff nor her agents have ever given any written or oral consent to defendants to make any character of alterations in and to said premises. She further alleged that the subdividing of said building would make it unsightly, cheapen its appearance, and probably affect the price for which said property could be sold, and that when possession of said premises is restored to plaintiff upon the expiration of the lease it will necessitate the incurring of an expense to place the building in the condition it was before these changes had been made. J. E. Gill is the president of the corporation, the Texas Tire & Rubber Company.

In the answer of the defendants to plaintiff's petition, the defendants averred that at the time of the execution of said lease con-

tract said premises were in a bad state of repair, having for many years been used and occupied for saloon purposes, without any substantial repairs having been made; that the front of the building was unsightly, badly arranged, and that the floors were rotten and badly in need of repairs; that in order to make said premises tenantable, it was agreed and understood, and so stipulated by the terms of the lease contract, that the lessees would repair said building, and keep the same in repair, and in pursuance of such agreement and stipulations the lessees put in the present front to said building, the whole of the floor, including new floor joists, stool, washbasin and plumbing, and gas pipe, all at the reasonable cost and expense of $1,300; that these repairs and improvements were made and done with the knowledge and approval of the plaintiff and Max K. Mayer, her agent. Defendants further alleged that it was provided in said lease that the defendants had the right to sublet to other persons, and that it was contemplated that incidental to such subletting, such partitions, plumbing, and other work and repairs as might reasonably be required for the accommodation and convenience of subtenants would be permitted and allowed. They denied that they had made, or intended to make, any alterations in said building in violation of the terms of said lease contract, but that all repairs and work done, and contemplated, on said building, is in pursuance of the right given under the lease contract to sublet the whole or any part of said building; that on, to wit, about February 1, 1920, Max K. Mayer, acting for the plaintiff, stated to the defendant Gill that he (Mayer) did not want the lessees to make any money on said property, and not until the plaintiff and her agent become advised that a portion of said premises had been sublet to a Mr. and Mrs. Taylor Page, at a rental exceeding the monthly rental provided by the terms of said original lease, was any complaint made; that no complaint was ever made by the plaintiff or her agent respecting the repairs and improvements made by the lessees, but, on the contrary, they were approved by them. Defendants further answered that they had rented the front part of said building to Mr. and Mrs. Page, and that by the terms of the contract between the defendant and the Pages the latter were, at their own expense, to leave the building in the same condition as would comply with the contract between the lessors, the defendants here, and the owner of the building.

The motion to dissolve was heard before the court, and the evidence introduced, consisting of the original lease contract between plaintiff and the defendants, testimony of J. E. Gill, the lease contract between the Texas Tire & Rubber Company and J. E. Gill to the Pages, and the testimony of H. J. Harris,

the building contractor who supervised the work of making the changes in the building incident to the occupancy of the front part of the building by Mrs. Page. He testified that the partitions and the plumbing put in could be removed without injury to the building, and that the front door, which was changed, could be removed and the original door put in its place without injury to the building. It was agreed that Max K. Mayer was the agent of plaintiff, and that he made no objection to the use of the front part of the building by Mrs. Page; that is, he had no objection to a dressmaking business which she proposed to conduct therein. Under the lease contract between defendants and the Pages, the defendants reserved the west half of the building. The lavatory was changed from the back part of the building to the center. A partition was put in, dividing the lower story of the building east and west, and a second partition divided Mrs. Page's part north and south.

The evidence further showed that during the month of January, 1920, shortly after the defendant Gill and Mrs. Page began their negotiations for the rental to her of a portion of the building, Mr. Mayer called up Gill one evening by telephone, and stated to him that he understood that he was going to sublet the place, and stated that Gill did not have any contract, and he was going to take steps to throw him out, and also said that he was not going to allow him to make any money on "our" building. He did not state that he objected to Mrs. Page as a tenant, and said that the matter might be adjusted if Gill would come down to see him. Gill did not go.

We think the stipulation in the contract of lease between the plaintiff and the defendants, according to the defendants the right to sublet the premises in part or in whole, carried with it the right of the lessee to make, or permit the making of, such changes and additions in the building as were reasonably necessary to the use of the building by such tenants, provided such changes did not constitute a substantial change in the structural quality of the building, and where the additions could be removed at the expiration of the lease without injury to the building. Cawker v. Trimmel, 155 Wis. 108, 143 N. W. 1046, Ann. Cas. 1915C, 1005; Commonwealth v. Hayden, 211 Mass. 296, 97 N. E. 783; Kresge v. Maryland Casualty Co., 154 Wis. 627, 143 N. W. 668; Bigelow v. City Council of Worcester, 169 Mass. 390, 48 N. E. 1. These cases hold that ordinarily the word "alteration," as applied to a building, means a substantial change therein. The lease in the instant case provides:

"All repairs upon said property herein leased, during the time that the same may be leased, shall be at the expense of said lessees, unless

by special agreement the said lessor undertake to pay for the same."

The lease between the defendant and the Pagés provided that the sublessees were permitted to remove the toilets and partitions, etc., at the expiration of said lease at their own expense, leaving it in the same condition as at the time of said occupancy; that is to say, in the same condition as will comply with the contract with the owner of the building.

The evidence supports the conclusions, which in support of the judgment we must impute to the trial court, that the defendants are now, and will likely be at the expiration of the lease, financially able to put the building in the condition it was before the changes were made incident to the use of the building by the Pages, and that they are solvent and will be able to respond in damages for failure so to do. Hence we conclude that the trial court did not err in vacating the injunction theretofore entered.

The judgment will be affirmed.