WALTER C. FERGUSON, SR., MARTIN FERGU-
SON, and WALTER C. FERGUSON, JR., doing
business as WALTER C. FERGUSON AND SONS,

*Plaintiffs and Respondents,*

vs.

H. R. HAYGOOD,

*Defendant and Appellant.*

(No. 2467; December 12, 1950; 225 Pac. (2d) 336)

For the defendant and appellant the cause was submitted upon the brief and also oral argument of A. D. Walton and C. E. Lane, both of Cheyenne, Wyoming.

For the plaintiffs and respondents the cause was submitted upon the brief and also oral argument of Clarence A. Swainson of Cheyenne, Wyoming.

426

428

## OPINION

BLUME, Justice.

This is an action for unlawful detainer originally commenced in the Justice's Court and appealed to the District Court of Laramie County, Wyoming. From a

judgment entered in the District Court in favor of the plaintiffs the defendant has appealed to this court.

It appears herein that on March 21, 1928, Saphronia A. Haygood executed a note in favor of Nora E. Scott for the sum of $5538.92 without interest prior to the death of the maker of the note but with interest at the rate of 6% per annum thereafter, the maker of the note agreeing to pay all costs, expenses and attorney's fee in case of suit or in case the note or any balance thereof should be in default of payment. The note was made payable on or before five years after date. Simultaneously, with the execution of the note hereinabove mentioned, Saphronia A. Haygood, an unmarried woman of Laramie County, Wyoming, made and executed to Nora E. Scott her mortgage on the following described property owned by her: "All lands south of the Union Pacific Railroad Track in Section 15, the North Half of the North Half of Section 21, the North Half of the North Half of Section 22, and the North Half of the Northwest Quarter of Section 23, all in Township 13 North, Range 70 West 6th P. M." located in the County of Laramie and State of Wyoming. The mortgage secures the payment of the note hereinabove mentioned. It further provides that: "And in case default shall be made in the payment of the said principal sum of money hereby intended to be secured, or in the payment of the interest thereof, or any part of such principal or interest, as above provided, then it shall and may be lawful for the said party of the second part, her heirs, executors, administrators or assigns, to sell and dispose of said above described premises, and all the right, title, benefit and equity of redemption of said party of the first part, her heirs or assigns therein, at public auction, for cash, according to the statute in such case made and provided, and in the manner therein prescribed, and out of the money arising from such sale, to retain the said principal and interest, together with the costs and

expenses of such sale, and Five Hundred Dollars for attorney, solicitor or counsel fees." The mortgage was duly filed of record in the office of the County Clerk of Laramie County on March 23, 1928.

Saphronia A. Haygood, the mortgagor above mentioned, died on or about October 30, 1928, leaving a last will and testament which was admitted to probate in Laramie County, Wyoming, on November 30, 1928. And Nora E. Scott, the mortgagee hereinabove mentioned, was pursuant to the provisions in the will appointed as executrix thereof and letters testamentary were granted to her. On November 29, 1948 she filed in the matter of the estate of Saphronia A. Haygood a statement to the effect that she was the holder of the promissory note and mortgage above mentioned, and that she: "has elected to foreclose the above-described mortgage by advertisement under the power of sale contained in said mortgage and pursuant to the law in such cases made and provided, and hereby waives all recourse against the property of the above-entitled estate except the property of said estate subject to the lien of said mortgage." Thereupon, due notice of foreclosure of the mortgage was published in the Wyoming Tribune on October 28, November 4, November 11 and November 18, 1948, reciting the mortgage above mentioned; that the payment therein provided to be made is in default; that the amount due at the time of the first publication of the notice is the sum of $12,157.89 together with the sum of $500 as attorney's fee; that no suit or proceeding at law has been instituted to recover the debt secured by said mortgage or any part thereof; that said mortgage contains full power of sale; that accordingly said mortgagee will cause the mortgaged premises in said mortgage to be sold at public auction by the Sheriff or Deputy Sheriff of Laramie County, Wyoming, at the south front door of the Court House, also known as the City and County Building, in the City of Cheyenne,

Laramie County, Wyoming, on the 29th day of November, 1948, at 11:00 o'clock in the forenoon of that day.

The premises are described as hereinabove mentioned. On the date above mentioned the Sheriff of Laramie County sold the premises above mentioned to Walter C. Ferguson, Sr., Martin Ferguson and Walter C. Ferguson, Jr., doing business as Walter C. Ferguson and Sons, for the sum of $15,200.00 and on the same day the sheriff executed a certificate of sale to the purchasers which was duly filed of record on December 2, 1948. On June 7, 1949 the purchasers of the premises above mentioned caused notice to be served upon H. R. Haygood, the defendant herein, describing the land above mentioned and stating that he was withholding the possession of the premises from said purchasers without any lawful right thereto; that the real estate had been sold under a power of sale contained in a mortgage deed; and that unless the said H. R. Haygood would quit the premises and surrender possession to the purchasers within three days from the date of service of this notice, an action would be commenced against him to recover possession of said premises and damages for the wrongful detention thereof. On June 29, 1949 after non-compliance with this notice, the purchasers above mentioned commenced an action against H. R. Haygood, the complaint and petition stating as follows: "Plaintiffs complain of defendant as follows: That plaintiffs are the purchasers of, and entitled to the immediate possession of the premises in Laramie County, Wyoming, described as: all lands south of the Union Pacific Railroad in Section 15, the N½N½ of Section 21, N½N½ of Section 22, and N½NW¼ of Section 23, all in Township 13 N. R. 70 West of the Sixth P. M.; said lands having been sold on November 29, 1948 to plaintiffs by the Sheriff of Laramie County, Wyoming, under power of sale contained in a mortgage. That defendant unlawfully, wrongfully and forcibly detains and withholds the pos-

session of said premises from plaintiffs, although plaintiffs are entitled to the immediate possession of same; that more than six months has elapsed since the date of sale of said lands under foreclosure by advertisement and sale, and plaintiffs as purchasers thereof are entitled to possession and to the rents and profits of said lands and tenements under and by virtue of Section 3-4304 Wyoming Compiled Statutes, 1945. That on or about the 7th day of June, 1949 defendant was duly served with a written notice by plaintiffs to quit the said premises within three days from the date of service of said notice but that defendant has refused and neglected, and still refuses and neglects to surrender possession of said premises to plaintiffs. That by reason of the wrongful acts of defendant in withholding possession of said premises from plaintiffs said plaintiffs have been deprived of the rents, issues and profits of said premises to their damage in the sum of two hundred dollars ($200.00). WHEREFORE, plaintiffs pray for restitution of said premises, and for damages in the sum of $200.00 and accruing rents, issues and profits, and for costs." The defendant appeared in the case and filed an answer and demurrer. He denied that plaintiffs had the right of possession of the property in controversy. He claimed that title to the real estate is involved and is now in litigation in the District Court of Laramie County, Wyoming, and for that reason the court had no jurisdiction of the subject matter of this action. He attached a third amended petition in a case, commenced in the District Court in which the title of plaintiffs was attacked for various reasons. Defendant further asserted that the petition fails to state facts sufficient to constitute a cause of action.

Judgment was rendered in favor of the plaintiffs in the Justice's Court. Defendant thereupon appealed to the District Court where the case was tried de novo and

judgment again resulted as above mentioned in favor of the plaintiffs from which the appeal herein has been taken.

## 1. SUFFICIENCY OF THE PETITION.

It is claimed that the petition fails to state facts sufficient to constitute a cause of action. But it is not pointed out in what the deficiency consists. Section 14-1501, Wyo. Comp. St. 1945 provides for two classes of cases in which an action of the kind before us may be brought, namely first where an unlawful and forcible entry is made, and second where a lawful and peaceable entry has been made, but the premises are subsequently unlawfully or forcibly detained. We are here dealing with one of the second class of cases, namely with unlawful detainer—although commonly embraced, as in our statute—in the term "forcible entry and detainer." It seems that the statutes of some of the states (aside probably from cases where a tenant holds over—see 36 C. J. 627) provide only for the first of these classes. 36 C. J. S. 1151, 22 Am. Jur. 917, Section 14. These statutes are designed to protect parties in peaceable possession of property, and that they shall not be turned out by strong hand, violence or terror. In these cases the complainant must have had prior possession, while in unlawful detainer under statutes such as ours prior possession by the complainant is not necessary. 36 C. J. S. 1151, 22 Am. Jur. 909-910, Section 6. Section 14-1502, Wyo. Comp. St. 1945 seems to provide in the main at least, for specific cases of unlawful detainer, including cases against tenants holding over their term, and including cases, according to subdivision 3 "When real estate has been sold under a power of sale contained in any mortgage or trust deed, and the purchaser at such sale or his assignee has duly demanded possession thereof." That is the kind of case before us. This

subdivision (3) was not originally in the statute but was added thereto by Chapter 112, Session Laws of 1913. The specific relation between Sections 14-1501 and 14-1502, supra, is not altogether clear, insofar as cases of unlawful detainer are concerned. That was discussed to some extent in Church vs. Blakesley, 39 Wyo. 434, 273 P. 541. The end of Section 14-1502, supra provides that: "This section shall not be construed as limiting the provisions of the first section of this chapter." Ever since the revision of 1887 (Section 3575) that clause has been construed as referring to the provisions of Section 14-1501, supra. So it may be that unless reference is made only to forcible entry and detainer the latter section might embrace cases of unlawful detainer not mentioned in Section 14-1502, supra.

It is held that it is sufficient to follow the language of the statute on which the complaint of an action of this sort is based. 36 C. J. S. 1180, 26 C. J. 851. The petition in this case discloses in the language of the statute that the real estate involved in this case has been sold under a power of sale contained in a mortgage and further, that possession of the premises has been duly demanded. So the allegations in the petition seem to be sufficient insofar as the provisions of Section 14-1502, Wyo. Comp. St. 1945 are concerned. Section 14-1501, Wyo. Comp. St. 1945 as above stated, provides that an action of detainer may be brought after a lawful entry on the premises but when they are held unlawfully. The petition in this case alleges clearly that the defendant unlawfully withholds the possession of the premises in question from the plaintiffs. There is some language contained in White vs. Veitch, 27 Wyo. 401, 197 P. 983, which might be construed as meaning that it was necessary in this case to allege that the lands were entered upon lawfully. It would seem, however, that the manner of entry upon the land would be wholly immaterial in a case such as

that before us, and it seems to have been so held. Lecatt vs. Stewart, 2 Stew. (Ala.) 474 and see the discussion on that point in Church vs. Blakesley, supra.

We think accordingly that the objection that the petition fails to state a cause of action must be overruled.

## 2. CERTIFICATE OF SALE AND SHERIFF'S DEED.

The certificate of sale issued by the sheriff of Laramie County to the plaintiffs herein on November 29, 1948 provides inter alia: "I * * * do hereby certify that at the expiration of the period of redemption provided by law, as such sheriff, and by virtue of said sale, * * * I will give and grant unto said purchasers, their heirs and assigns a deed conveying to them all the title in and to said premises." Objection is taken to this statement in the certificate of sale on account of the fact that Section 3-4302, Wyo. Comp. St. 1945 provides: "Said certificate shall also state that the purchaser will be entitled to a deed for such lands or premises at the expiration of nine (9) months from the date of sale, unless the same shall have been redeemed prior to that date as provided by law." There may be some doubt as to whether or not the difference in the language is of any importance since the substance of the provisions of the statute is stated in the certificate of sale.

It seems that on May 31, 1949, the sheriff made and executed to the purchasers of the premises a deed to the land involved herein. That was only six months and two days after the sale of the premises. Under Section 3-4303, Wyo. Comp. St. 1945, redemption of the lands which have been sold may be made for a period of six months after the sale by the mortgagor, his heirs, his executors, administrators, assigns or guarantors. Under the succeeding section, creditors may redeem the lands from such sale after the expiration of six months and at any time before the expiration of nine months

from the date of the sale and that section contemplates that a sheriff's deed may be issued after the expiration of nine months. It may be accordingly that the deed was issued prematurely. As to whether or not that can be taken advantage of by the parties mentioned in Section 3-4303, Wyo. Comp. St. 1945, is another question and need not be decided herein. The premature issuance of the deed and the error, if any, in the certificate of sale mentioned above are, we think, wholly immaterial herein, for the reason that Section 3-4304, Wyo. Comp. St. 1945 provides as follows: "The execution debtor, in case of sale on execution, and the mortgagor or owner, in case of a mortgage foreclosure, shall be entitled to the possession of the lands and tenements sold and to the rents and profits for a period of six (6) months after the sale. At the expiration of six (6) months from said sale the purchaser shall be entitled to possession and to the rents and profits of said lands and tenements until redemption may be made from him." Hence, while it may be conceded that ordinarily speaking and in the absence of a special statute like ours, a purchaser of lands under a power of sale contained in a mortgage would not be entitled to bring an action of unlawful detainer until a sheriff's deed has been issued, our statute providing that the purchaser is entitled to the possession after the expiration of six months from the sale is so plain that the objection made herein to the certificate of sale and the premature issuance of the sheriff's deed is of no importance herein.

## 3. JURISDICTION OF JUSTICE OF THE PEACE.

As hereinbefore noted the defendant alleged that title to the property was involved in the present action, and he asked that the cause be certified to the District Court as required by the provisions of Section 14-406, Wyo. Comp. St. 1945, which provides in substance that when it appears that title to lands or boundaries come in

question before a justice of the peace, he shall certify the case to the district court. It is asserted that the failure to comply with this provision of the statute was fatal to the proceedings herein. Counsel, however, have overlooked the decision in Jenkins vs. Jeffrey, 3 Wyo. 669, 29 P. 186 in which it was held that this provision of the statute does not apply to cases coming within the statutes relating to forcible entry and detainer. And referring to the same statute the late Chief Justice Potter speaking for the court stated in Allen vs. Houn, 30 Wyo. 186, 219 P. 573, as follows: "We accept as correct also the asserted proposition that in such an action title is not involved, another principle acknowledged as sound in the Jenkins-Jeffrey case, the court going to the extent in that case of holding that in an action of forcible entry and detainer neither the title to land nor the boundaries of land can be properly disputed or called in question, and that a provision in another part of the justices' code is, therefore, inapplicable to a forcible entry and detainer action, viz., a provision requiring the justice to cease proceedings in a cause and certify it to the District Court for trial or further proceedings 'if it appear * * * from the evidence of either party, that the title to land or boundaries shall be disputed or brought in question by the other party, by pleading or evidence.' But the court said that evidence of title is sometimes admissible in such a suit to show the purpose for which the entry was made, and the character and extent of the defendant's possession." Oklahoma and Kansas have statutes identical in effect as the provisions of Section 14-406, supra, and the holding in these states under these statutes is the same as the foregoing holding of this court. Armour vs. Howe, 62 Kan. 587, 64 P. 42, Zahn vs. Obert, 24 Okl. 159, 103 P. 702. More on this general subject will be mentioned presently. Counsels' contention in this connection must accordingly be overruled.

## 4. INSANITY OF HEIR OR MORTGAGOR.

Arthur L. Haygood was under the will of Saphronia A. Haygood given a life estate in her property. It seems that he was adjudged insane and committed to the Wyoming State Hospital for the insane sometime in the month of June 1947. The claim made by counsel for the defendant herein is that in view of the fact that he was not represented in and was not made a party to the foreclosure proceedings, it was absolutely void. If the insanity mentioned was a defense herein, it would seem that it should have been pleaded, which was not done. Aside from that, it seems to be the unanimous, or at least almost unanimous, holding of the courts that in the absence of a statute: "A power of sale is not revoked or suspended by the supervening insanity of the mortgagor." 59 C. J. S. 887, 3 Jones on Mortgages (8th Ed.) page 834, 2 Wiltsie, Mortgage Foreclosure (5th Ed.) Section 844, 37 Am. Juris. 112, Sec. 658, Annotation 56 A. L. R. 225. In Perry on Trusts and Trustees (7th Ed.) Vol. II, Section 602h it is stated: "It is a universal rule that a power coupled with an interest is irrevocable; and as a power of sale inserted in a mortgage or contained in a deed of trust to a creditor to secure a debt or to a third person for his benefit, is a power coupled with an interest, it cannot be revoked by any act of the grantor or donor of the power. Not even the death or insanity of the grantor or donor will annul the power or suspend its exercise." In Berry vs. Skinner, 30 Md. 567 the court, speaking of the power in a mortgage, stated: "It is plain this is not a naked power collateral to the grant, but is a power coupled with an interest in the premises conveyed by the mortgage deed. Being intended for the benefit of the mortgagee, as affording him a more speedy and summary mode of collecting his debt than by ordinary proceeding to foreclose, it is appendant to the estate and is part of

the security itself. It would pass with the estate by assignment of the mortgage debt, and would not be affected by the death of the mortgagor, but could be executed after his death. * * * Such being the nature and character of the power in the mortgage before us, no other conclusion, upon principle, can be drawn than that the lunacy of the mortgagor could not in any manner affect or interfere with the mortgagee's right to execute the power, and foreclose the right of redemption, in the mode and manner stipulated by the parties. If death would not revoke, or suspend the execution of such power, there is no reason why the lunacy of the mortgagor should have that affect. The mortgagee cannot be suspended in his rights, because of the misfortunes of the mortgagor, nor of his lunacy any more than any other misfortune, unless provided for in the contract."

In Lundberg vs. Davidson, 72 Minn. 49, 74 N. W. 1018, 42 L. R. A. 103, the court among other matters stated: "His counsel contended very earnestly, * * * that where the occupant of the mortgaged premises is insane the power of sale is suspended, and that there can be no valid foreclosure under it; that the mortgage can only be foreclosed by action in which a guardian ad litem may be appointed to protect his interests. This is directly contrary to what was held on the former appeal in this action. (68 Minn. 328), 71 N. W. 395. Such would not be the law even in case of a judgment obtained against the lunatic, based upon personal service of the summons upon him. * * * But no case can be found which holds that a sale under a power coupled with an interest is void on the ground that the mortgagor, or any person upon whom notice is to be served, is insane, or under any other disability. * * * we have found no case where a sale under a power exercised in perfect good faith was ever set aside merely because the mortgagor, or some party on whom notice is required to be served, was insane, or under some other

disability, at the time the power was exercised, or for that reason coupled with the further fact that the price for which the property was sold was much below its actual value. Any such doctrine would render titles acquired on sales under powers exceedingly uncertain and unreliable. In fact, a mortgagee or a purchaser at the sale would never know with absolute certainty whether his foreclosure or purchase was valid. * * * Counsel for plaintiff greatly rely on Encking v. Simmons, 28 Wis. 272, as supporting their contention. The opinion in that case contains some statements which, if detached from their context, and considered without reference to the particular facts, would, in our judgment, be of doubtful accuracy." In Barber vs. Federal Land Bank of Houston (Tex. App.) 204 S. W. 2d 74, it was said: "If insanity of the original mortgagor would not prevent a sale under the power contracted for in the deed of trust, certainly the position of his grantee who had assumed the obligation of the deed of trust, and later became insane, would not be improved." If neither the insanity of the mortgagor nor that of his grantee suspends or voids the power of sale, it would seem to follow necessarily that it is not suspended or voided by the insanity of one of the heirs of the mortgagor; particularly should that be true if the person relying thereon is not, as in the case at bar, holding or claiming under such insane person.

Counsel for the defendant cite us to the case of Encking vs. Simmons, 28 Wis. 272, mentioned above. That was an action in equity in which it appeared that the land in question was sold for less than one half its value under a power of sale. In the case at bar the land was appraised at $3800. It was sold for $15,200. In the Encking case the court held, as other courts do, that the insanity of the mortgagor did not suspend the power of sale, but that fraud was committed in deliberately de-

priving the insane mortgagor of his property, and that since the parties could be put in statu quo, the sale should be rescinded. The case is not in point herein, if for no other reason than the fact that neither the court of the justice of the peace nor the action for unlawful detainer is designed to try equitable defenses, of which more anon. For similar and other reasons the case of Casper National Bank vs. Swanson, 42 Wyo. 113, 291 P. 812 is not in point herein.

## 5. EXECUTRIX AS FIDUCIARY—INQUIRY AS TO EQUITIES INVOLVING TITLE.

Great stress is laid by counsel for appellant on the duties of Nora E. Scott who held the mortgage in question in her fiduciary capacity as executrix of the will of Saphronia A. Haygood. To make the point clearer, it may be well to state some of the facts. On August 21, 1928, the latter made her last will and testament in which she appointed Nora E. Scott, her daughter, as the executrix if she was willing to act, or the Stock Growers National Bank in case she should refuse to act. Full power of management and sale of property without report to the court was given to the executrix. Subject to the powers vested in her she gave a life estate to her son Arthur L. Haygood in all of her property, the remainder to her other children namely, Nora E. Scott, Ada B. Boyce, Florence O. Boyce, Allen W. Haygood and the defendant H. R. Haygood. She provided that: "Subject to the control and powers herein granted to my executrix and trustee, it is my desire that my son, Arthur L. Haygood continue to reside on my ranch in Laramie County, Wyoming, and to exercise such control and management of the ranch and ranch property as may be consistent with the authority and powers herein granted to my executrix and trustee." Nora E. Scott was appointed executrix and she qualified as such. In

her first report filed May 10, 1929, she reported that the ranch had been placed in charge of Arthur L. Haygood who had been given life estate therein. The personal property was not sufficient to pay all the debts and taxes. She did not present her individual indebtedness to the court for allowance and did not inform the court that she personally held the mortgage hereinbefore mentioned until Nov. 29, 1948. In her fourth report filed January 31, 1949 she reported the sale of the ranch property pursuant to the power of sale in the mortgage, and she charged herself with the difference between the sale price and the indebtedness due thereon namely, the sum of $2466.17. She also therein stated that the defendant H. R. Haygood continued to reside on the property in question herein by some unknown arrangement with Arthur L. Haygood. At the time of the trial herein it appeared that the rental value of the real property at that time was at least $2000 per annum, although in 1929 the real property itself had been appraised at only $3800. Other facts appearing in documents offered in evidence (and rejected) are not of sufficient importance, at least in this action, so as to be necessary to be mentioned here.

We have held that a party holding a mortgage which contains a power of sale may exercise that power without presenting his claim to the court. Denver Joint Stock Land Bank vs. Preston, 52 Wyo. 132, 70 P. 2d 584, Delfelder vs. Teton Land & Investment Co., 46 Wyo. 142, 24 P. 2d 702. In the latter case we also held that an attorney fee may be allowed under a mortgage in connection with which a power of sale is exercised if the mortgage provides for such fee. We also held that the amendment of our statutes by Chapter 122, Session Laws of 1945 (Section 59-201, Wyo. Comp. St. 1945) limiting the time to ten years in which a mortgage containing a power of sale may be foreclosed, does not apply

to mortgages executed and matured prior to the amendment. But counsel for appellant seem to think, if we understand them correctly, that because Nora E. Scott acted in a fiduciary capacity when acting as executrix—which is correct—the rule of law is different and it is argued that she, under the circumstances, should not have exercised the power of sale, but should have presented her claim to the court and left it to the latter to protect all parties, and that she should have rented out the ranch and thus have realized the sum due on the mortgage. No cases in point have been cited. Whatever merit there may be in such contentions, on which we express no opinion, they are clearly matters collateral to the matter involved in this suit. (American Trust Co. vs. De Albergaria, 123 Cal. App. 76, 10 P. 2d 1016); they present equitable defenses based on the contention that by reason of Nora E. Scott violating her fiduciary relation, an equitable title still remains in the heirs and devisees of Saphronia Haygood. But as already indicated, title is not involved in an action such as before us except as it is incidental thereto. It is said in 36 C. J. S. 1148-1149: "As a general rule, title to property is not involved and cannot be inquired into in actions of forcible entry and detainer, except as an incident tending to show the right of possession where such right is involved. * * * and the secret equities between the parties are not matters for investigation. If defendant has any title to the land it must be tried in some action proper for trying such questions." In 36 C. J. S. 1167 it is stated that: "Equitable defenses * * * are not available in these proceedings, unless there is special statutory authority therefor." The rule is the same in cases of unlawful detainer. See 52 C. J. S. 641, Annotation 120 Am. St. Rep. 65. In 59 C. J. S. 1005 under the subject "Mortgages" it is stated: "In a summary proceeding to recover possession under some statutes, defendant may not set up matters, wholly dehors the record, bearing

on the capacity of the mortgagee or trustee, * * *. The right to rely on various grounds going merely to the validity or effectiveness of the mortgage or primary obligation to defeat recovery has been denied, as for example, * * * want of consideration, or the mortgagor's mental incapacity at the time the mortgage was executed. * * * In an action of unlawful detainer brought by the purchaser under some statutes, defendent may not interpose purely equitable defenses, and may not present the broad question of title as a matter of defense." In Reid vs. Rylander, 270 Mich. 263, 258 N. W. 630, 631, in a summary proceeding after sale of property under power of sale the court stated: "We again hold that validity of the sale may be tested in a summary proceeding based thereon, insofar as invalidity thereof appears in the procedure, but underlying equities, if any, bearing on the instrument, legal capacity of the mortgagee or trustee, and other matters, wholly *de hors* the record, inclusive of an accounting to determine the amount due, cannot be made triable issues in a summary proceeding." In a similar case, namely Cheney vs. Trauzettel, 9 Cal. 2d 158, 69 P. 2d 832, the court stated: "It is true that where the purchaser at a trustee's sale proceeds under section 1161a of the Code of Civil Procedure he must prove his acquisition of title by purchase at the sale; but it is only to this limited extent, as provided by the statute, that the title may be litigated in such a proceeding. * * * But compliance with all the statutory requirements in respect of the conduct of the sale is admitted. * * * Irrespective of the merits of the defenses raised by the answer, the alleged equitable grounds of attack on plaintiff's title have no place in the present summary proceeding, for, if such issues are permissible, the proceeding entirely loses its summary character. In our opinion, the plaintiff need only prove a sale in compliance with the statute and deed of trust, followed by purchase at such sale, and

the defendant may raise objections only on that phase of the issue of title. Matters affecting the validity of the trust deed or primary obligation itself, or other basic defects in the plaintiff's title, are neither properly raised in this summary proceeding for possession, nor are they concluded by the judgment." This holding was followed in Delpy vs. Masayoshi Ono, 22 Cal. App. 2d 301, 70 P. 2d 960. Wiltsie on Mortgage Foreclosure (5th Ed.) Vol. 2, Section 906 states the matter as follows: "If the proceedings for foreclosure were regular, the validity of the mortgage or the motives of the applicant cannot be inquired into on summary proceedings; but it is the duty of the court to examine the evidence of the foreclosure and to ascertain whether the papers *upon their face* confer a right to the possession of the property." (Italics supplied). The reason for this rule is plainly stated in McDonald vs. Stiles, 7 Okla. 327, 54 P. 487, where the court said: "We are satisfied that it was never the intention of the legislature that any question other than that of the right to possession should be tried in this class of cases. It was the purpose to provide a speedy and inexpensive mode of restoring possession of real estate to the one rightfully entitled to the same. By putting title in issue, and certifying the case to the district court, all the purposes and ends to be attained by this form of remedy, and the evils to be corrected, are defeated, and the action becomes one to try legal and equitable titles, and delays the determination of possessory rights. Upon neither sound reason nor principle can the practice be sustained of converting a possessory action into one of ejectment, or one in equity to declare a resulting trust and decree conveyances of legal titles. There are appropriate forms of action and proper forums provided for the trial of all this class of cases, and the ends of justice will be much better subserved if the remedy intended to be provided for the unlawful withholding of possession of real

estate is confined to the purposes for which it was originally designed."

What is hereinabove said is emphasized by the fact that the plaintiffs, purchasers of the property in question at the mortgage sale, are strangers—third parties —and their rights cannot be overlooked. See Da Silva vs. Turner, 166 Mass. 407, 44 N. E. 532, 59 C. J. S. 1021, Section 594, Subdivision (b).

Moreover, it has not in any way been shown that the defendant H. R. Haygood had any right of possession to the property in question. If any one of the heirs of the deceased had any right of possession, it was Arthur L. Haygood who had a life tenancy in the land. So far as the record shows, he is still alive, though insane. It has not been shown herein that he, while sane, granted his rights to the defendant, without saying that such grant would have had any value.

Section 59-115, Wyo. Comp. St. 1945 expressly authorizes the sale of property pursuant to the power of sale therein contained. So far as the record before us shows, the note and mortgage involved herein are valid and the proceedings for foreclosure were regular. We cannot accordingly find any reason for interfering with the judgment of the trial court herein and that judgment is accordingly affirmed.

RINER, C. J., and KIMBALL, J., concur.