GUIDO DURANTE,

*Plaintiff and Appellant*

vs.

THE CONSUMERS FILLING STATION COMPANY OF CHEYENNE, a Corporation

*Defendant and Respondent*

GUIDO DURANTE,

*Plaintiff and Appellant*

vs.

THE CONSUMERS FILLING STATION COMPANY OF CHEYENNE, a Corporation

*Defendant and Respondent*

GUIDO DURANTE,

*Plaintiff and Appellant*

vs.

THE CONSUMERS FILLING STATION COMPANY OF CHEYENNE, a Corporation

*Defendant and Respondent*

(Nos. 2587, 2588 and 2589; May 19th, 1953; 257 Pac. (2d) 347)

272

274

For the appellant the causes were submitted upon the brief and also oral argument of Byron Hirst of Cheyenne, Wyoming.

For the respondent the causes were submitted upon the brief of Greenwood, Ferrall and Williams of Chey-

enne, Wyoming, and oral argument by Mr. James A. Greenwood.

## OPINION

HARNSBERGER, Justice:

By direct appeal to this court, the plaintiff below seeks reversal of separate judgments of the district court in three actions wherein the parties are identical and the issues are more or less substantially the same, in that they all involve the right to possession of real estate.

On May 1, 1950, plaintiff—as owner and lessor of premises—brought his first action of forcible entry

and detainer in the justice court to obtain possession of the property from the defendant who was in possession holding under a written lease for ten years from March 1, 1945, at a monthly rental of $200 payable in advance. The lease gave the lessee permission, at his own expense, to "remodel or make alterations of the premises and building, either inside or outside, during the term"—but, provided that lessee "shall first obtain the written approval of the Lessor to any material changes". Plaintiff alleged as grounds for the action that material alterations were made "without first having obtained the written approval of the lessor or any approval whatsoever."

The lease also set forth "In the event of failure of the lessee to pay the rental herein provided for or to keep and observe the other conditions of this Lease, or any of them, Lessor shall be entitled to his option to declare this Lease terminated and to recover possession of the leased premises with or without legal process." Plaintiff then alleged his exercise of the option to terminate because of the lessee's alleged violation of the agreement not to make material changes without written approval and demanded possession of the property and his costs. The defendant generally denied the allegations of plaintiff's petition, alleged the court to be without jurisdiction and, for a second defense, pleaded a waiver by the plaintiff of the required consent.

Issue was joined upon the alleged violation of the lease by defendant remodeling and making material alterations without plaintiff's approval. Judgment was for the plaintiff and restitution of the premises ordered. The defendant appealed to the district court which found for the defendant and dismissed the action.

On September 7, 1951, the plaintiff commenced his

second action in the district court, and in his second amended petition set forth at length the lease in question, which, as above stated, contained provision for the monthly advance payment of $200 over the 10 year period of the lease, and also the above quoted excerpts relative to material alterations and alleged default in payment of the September 1951 rental as well as a violation of the agreement not to alter or remodel without approval by the lessor. Plaintiff again alleged his election to terminate the lease because of the default in payment of rent and the alleged violation of the agreement and, further pleaded, that the reasonable rental value of the premises was $450 per month.

The defendant's answer admitted its default in payment of the September 1951 rent, but pleaded the default was due to oversight and mistake; that as soon as the oversight was discovered and on September 7, 1951, defendant made immediate tender to the plaintiff of the $200 rent then due; that plaintiff refused to accept the tender and thereafter defendant "maintained" the tender by depositing a certified check for the amount with the Clerk of the District Court; that defendant "further offers to pay either by certified check or cash the sum of $200 for the rent for September 1951 on said premises and, further, offers to pay interest on said sum from September 1, 1951 to the date that the tender thereof was refused by the plaintiff and, further, offers to pay immediately into court any damage that plaintiff has sustained by reason of the failure of the defendant to make said payment on the 1st day of September 1951."

The answer also denied that material alterations of the premises were made without first obtaining plaintiff's consent, and pleaded that plaintiff had specifically waived the requirement that the defendant

"shall first obtain the written approval of the Lessor to any material changes"; that "said waiver was never revoked"; that "plaintiff told the defendant it could make any changes or modification to said building and premises it desired, so long as it paid for the same and the plaintiff did not have to pay therefor." The defendant then admitted plaintiff's ownership of the premises; and that the defendant is in possession and has not allowed plaintiff to enter into possession of the premises.

In defendant's second defense, the plaintiff's allegations as to the $450 per month rental value, is denied.

A further defense pleads waiver of alleged "violations of the terms of the lease" by plaintiff's acceptance of the lease rental "from the month of October 1950 to and including the month of August 1951", without protest or objection, and alleges "that during the time the plaintiff was accepting said checks (the rental payments) he had knowledge of all material changes, if any, that had previously been made to said building and premises."

Another defense attempts to plead estoppel of the plaintiff to assert against defendant any claim for violations of the lease agreement relating to material alterations made prior to March 5, 1949, being the date plaintiff commenced a previous action against the defendant for the recovery of the property now in question, the defendant alleging that the action of March 5, 1949, had been prosecuted to final judgment without plaintiff complaining that defendant had violated the lease by making material alterations without approval and, therefore, plaintiff should not now be permitted to complain of them. It might be well to note here that the action of March 5, 1949, was an ad-

ditional action between these same litigants, but is not one of the three actions now being considered.

Having so answered, the defendant prayed equitable relief from the rent payment default, that the plaintiff take nothing and the action be dismissed.

The plaintiff's reply challenges the sufficiency of defendant's tender made after default; pleads that his acceptance of money from defendant after default was "not in payment of rent but in partial payment for the value of the use of the premises"; denies the waiver by acceptance of the money; pleads himself to have been without knowledge concerning the material alterations alleged by him, until about September 7, 1951; denies defendant is entitled to equitable relief because "it does not come into this Court requesting the same with clean hands" in that the alleged violations of defendant have continued; that defendant has failed "to correct or repair the damage caused by alterations and repairs"; and that the rent default was caused by defendant's "own misconduct, negligence and carelessness".

Upon trial to the court without a jury the judgment was that plaintiff take nothing by his action and that the same be dismissed.

From these pleadings it appears that the trial court was called upon to decide whether or not equity should grant relief from the default of rent payment; if the acceptance of defendant's money by the plaintiff was a waiver of defaults and violations occurring before such payments; and whether the defendant made material alterations or remodeling of plaintiff's building and, if so, were such alterations made with the approval and consent of the plaintiff or had the plaintiff waived his right to complain.

The third case was filed in the justice court by the plaintiff on September 13, 1951 as another action in forcible entry and detainer. Here, too, the plaintiff pleaded the defendant's default in payment of the September 1951 rent and prayed restitution of the premises.

Defendant's answer consisted of eight defenses—

The first defense demurred to plaintiff's complaint.

The second defense pleaded defendant had a preemptive right to purchase the premises granted by the lease under which it held possession and that this created in defendant an estate and title in real estate, by reason of which the justice court was without jurisdiction.

The third defense alleged the value of the unexpired term of the lease to be beyond the jurisdictional limit of justice of the peace courts.

The fourth defense pleaded that a former action between the parties, for restitution of the premises, based on nonpayment of rent and alleging a rental value of $450 (said action being a different cause than those here considered) resulted in a final judgment rendered in the district court on September 27, 1950, and that such judgment was final, binding and conclusive on the parties here.

The fifth defense makes reference to the action brought May 1, 1950, in the justice court, and hereinabove referred to as the first case, and after alleging that no alterations had been made since May 1, 1950, asserts that because of the pendency of the May 1, 1950 action, this action should be dismissed.

The sixth defense pleads plaintiff's waiver of the right to have advance payment made of the rent be-

cause of plaintiff's previous practice of accepting delayed rent payments, and that no written notice revoking practice has been given defendant.

The seventh defense pleads that the plaintiff's allegations in the second case (brought in the district court) discloses that the cancellation of the lease in question involves an estate and the title to real estate, and hence is not within the jurisdiction of a justice of the peace.

The eighth defense pleads tender of the September 1951 rent made on September 7, 1951; makes renewal of the tender by certified check; offers to supplement the tender with cash; admits plaintiff's ownership of the premises and that defendant withholds possession. Defendant's prayer is that plaintiff take nothing and that defendant recover his costs.

The justice court rendered judgment that plaintiff have restitution of the premises, for costs and for $266 rent. The defendant appealed to the district court where defendant was given judgment, the action dismissed, and it was ordered that all monies paid by defendant to the clerk of the district court, less $10, be paid to the plaintiff.

From the above somewhat lengthy recitation of the development of these three cases, it will be seen that the basic question in each was the right to possession of the premises. In consequence, the actions were consolidated for the purpose of receiving evidence, the district court, however, rendering separate judgments. Appeal being taken by the plaintiff from the several judgments, the appellant elected to file separate briefs in each cause, the respondent filing a single brief, and each party presented to this court oral argument covering all three cases.

The first case hinged upon whether or not the defendant had remodeled or made alteration of the property without the plaintiff's approval, thus presenting a question of fact. This court has uniformly held that such determinations by the trial court will not be disturbed when there is substantial evidence to support the finding, and that in examining the record "the appellate court must assume that the evidence in favor of the successful party is true, leave out of consideration entirely the evidence of the unsuccessful party in conflict therewith, and give to the evidence of the successful party every favorable inference which may be reasonably and fairly drawn from it." (Willis vs. Willis, 48 Wyo. 403, 429, 49 P. (2d) 670; Brown vs. Wyoming Butane Gas Company, Inc., 66 Wyo. 67, 74, 205 P. (2d) 116.)

Bearing in mind that the plaintiff was required to bear the burden of proof, we give a brief resume of the evidence.

To prove the remodeling and material alterations, plaintiff testifies that the defendant moved plumbing, chopped holes in the cement floor and walls, placed pipes on top and underneath the floor, put in vents and skylight, installed stoves without flues or vents, caused a partition crack and cracks in the walls, cut a large hole and made numerous small holes in the walls and holes in the ceilings, and removed a masonry partition and later replaced it with a flimsy cardboard partition. The plaintiff emphasized that his complaint was not because this partition was replaced, but because it was replaced with flimsy material.

Against this testimony consider the testimony of the defendant's witnesses, which under the rule is to be taken as true, together with all reasonable inference to be drawn therefrom.

The witness, Henry Jamieson, testified that he was manager of the defendant company from January 16, 1944 to December 16, 1947; that he met Durante early during that employment, and saw him in the premises frequently—at least once a week or oftener—talked with Durante about the premises and the use of the same, and early in January or February 1945, asked and received Durante's permission to pull out the masonry wall; Durante saying—"You can take it out if you will stand all the expense"; that the removed masonry partition was just "butted against the wall"; "This wall was just set against it"; that the skylight was there when the witness commenced his employment in January 1944, and that at the time of trial the skylight was in the same condition as when he first saw it; that one of the doors to the men's rest room had been hung differently; that the stove, sink, ceiling vent, sink drain and water pipes in the cement floor were there when he came and were still there when he left with no changes; that he had disconnected the sink, tapped the pipes and cemented over the holes so that they could be used again; all of this being done in the Spring of 1945. That in 1946, there was a lot of work done on the grocery store rooms, and that Durante himself did this work; that after the removal of the masonry partition wall, Durante was frequently there and observed the change. *That there were no other changes* except some signs painted clear around the building; that the heaters were left the same as they were when he came; that Durante had never withdrawn the permission first given to make the alterations testified about, and *that no changes were made without Durante's authority*.

The witness, Mrs. Marguerite Moore, testified that she was employed on the premises from August 20, 1942 to June 15, 1949, and had been the defendant's manager at that place from December 15, 1947 to June

15, 1949; that Durante was in and out all of the time and talked frequently with her every few days when he was in town; that the masonry partition wall was removed in January or February 1945 while Durante was there; that the skylight was there when she started work in 1942; that the door from the men's room opening into the grocery store was closed in 1942 and later changed to open into the grease room; that the door was closed with compo-board and the change was made by opening the door and still later was closed up again; and that the big hole (15″ hole) in the wall was there in 1942.

The witness, Lester Rumsey, testified that he was defendant's manager from March 11, 1950 to December 31, 1951, and had met Durante about a month after starting to work; that in April 1950 Durante said he was receiving much less rent than he felt he was entitled to and wanted Rumsey to talk to the board of directors of defendant-company to induce them to increase the rent or that he would commence action to collect more.

The witness, Ralph Kent, testified that he was president of defendant-company, that defendant had put in a temporary wall made of 2 x 4's with plasterboard walls or celotex, which was simple to take out, and that this was done in 1948 or the first part of 1949, and that Durante had been at the premises and in the room where the temporary partition was placed subsequent to its installation.

The witness, Everett Philabaum, testified that he was vice president of defendant-company since January 1948, and that the only changes made were the pipes placed about the room, the temporary wall, and the restaurant being put in sometime in 1949.

The witness, Roscoe Carrier, testified that he was experienced as a contractor and brick mason, that he had looked at the place the Saturday preceding the trial, had examined the door into the men's room and the hole into the grease room; and saw the little nail holes around the walls, the big hole and smaller holes and the cracks in the wall. That the big hole was about 15″ in diameter and could be repaired by filling, at a cost of $10, that the little holes could be repaired by filling, at a cost of $1.00, that the door into the toilet could be replaced at a cost of $20, and that the cracks could be covered.

Mr. Jamieson on being recalled, further testified that Durante himself did all of the work of putting in the store front in the north room, except to install the window glass.

Certainly if the testimony of these witnesses is given credence, the result is to conclude—first, that the removal of the masonry partition was done by the express authority and with the knowledge and consent of the plaintiff; second, that the balance of the alleged alterations—although magnified by the testimony of the plaintiff himself—were of such minor character as to be almost inconsequential.

Without recounting the evidence in more detail, it is sufficient to say that the record contains testimony that is not only substantial but quite convincing to show that the defendant had neither remodeled nor materially altered the premises without the plaintiff's approval.

The obvious conclusion of the trial court that the partition in question did not constitute a material alteration is further supported by the decision in Klein's Rapid Shoe Repair Company, Inc., vs. Sheppardel

Realty Co., Inc., et al, 241 N.Y.S. 153, 155. In that case a declaratory judgment was sought as to the right of tenant to erect a partition extending from the front to the rear of the store building leased, without having secured the written consent of the lessor. The lease provided that the lessee might sublease the premises, but also contained the following:

" 'It is further covenanted and agreed that no alteration shall be made to the demised premises or improvements thereon except with the express consent of the landlord and 116-118 East 14th Street Corporation thereto in writing first had and obtained, but said consent shall not be unreasonably withheld. * * * ' ",

The court held that the lessee had the right to erect the partition without the written consent of the lessor; and that the lessor did not have the right to declare a forfeiture of the lease because plaintiff erected the partition without the written consent of the lessor, stating briefly as follows:—

" * * * Bearing in mind that plaintiff (the lessee) has a right to enter into a sublease, the fourth paragraph of the lease (quoted above) should be construed to carry the privilege of making any reasonable alterations necessary for plaintiff to carry out the privilege granted it. For the defendant's to say that under that paragraph plaintiff is not permitted to erect a temporary partition from the front of the store to the rear is unreasonable. The alteration such as plaintiff contemplates comes within the spirit of the lease, and consequently plaintiff is well within its rights in complaining of the unjust refusal on the part of the defendants to permit it to make the alteration outlined in detail upon the trial of the action." (parenthetics supplied).

See also 51 C.J.S. 1111, Sec. 372—

" * * * As incidental to the right to sublet the building or a portion thereof, the lessee has been held to have the right to make slight or reasonable alterations for that purpose."

In mayer vs. Texas Tire and Rubber Company, et al (Texas), 223 S.W. 874, 875, on application of the lessor an order was made restraining the lessee from dividing leased premises by installing a partition erected from the north to the south wall of the building, and a further partition running easterly to nearly the front of the premises, and from making changes in the plumbing. The lease contract provided—

" 'No alterations shall be made in said premises without the consent of the said lessor or her agents.' " and that the lessee had the right to sublet to other persons. On appeal, the court vacated the injunction, saying in part—

"We think the stipulation in the contract of lease between the plaintiff and the defendants, according to the defendants the right to sublet the premises in part or in whole, carried with it the right of the lessee to make, or permit the making of, such changes and additions in the building as were reasonably necessary to the use of the building by such tenants, provided such changes did not constitute a substantial change in the structural quality of the building, and where the additions could be removed at the expiration of the lease without injury to the building. Cawker v. Trimmel, 155 Wis., 108, 143 N.W. 1046, Ann. Cas. 1915C, 1005; Commonwealth v. Hayden, 211 Mass. 296, 97 N.E. 783; Kreske v. Maryland Casualty Co., 154 Wisc. 627, 143 N.W. 668; Bigelow v. City Council of Worcester, 169 Mass. 390, 48 N.E. 1. These cases hold that ordinarily the word 'alteration,' as applied to a building, means a substantial change therein. * * * "

In the instant case, the lease expressly gives the lessee the right to sublet all or any part of the leased premises, and the partition complained about is of considerably less proportions than that contemplated in the New York case. To hold that the installing of the partition here complained of was a material alteration of the premises, would be to hold that temporary installa-

tions to facilitate full use of the premises were not within the reasonable contemplation of the parties. We cannot accept this as sound.

There being absent from the record any specific findings of fact and conclusions of law, it is impossible for us to determine what consideration the trial court may have given to defendant's further claim that violations of the material alteration provisions of the lease had been waived by plaintiff.

However, on this subject of waiver, estoppel or consent, in 51 C.J.S. Sec. 372, p. 1113, it is said:—

"A covenant in the lease requiring written consent of the lessor to alterations is for the benefit of the lessor and may be waived, as by parol request for the making of an alteration. A lessor knowing of the making of alterations and interposing no objections thereto must be taken to have consented thereto; and a landlord is estopped to enforce limitations on the tenant's right to make alterations by his own consent thereto, provided the tenant has acted in reliance on the landlord's acquiescence, to his prejudice, and has been misled by the landlord's conduct; * * * "

(citing Engineering Co. v. Grande Bldg. Co., 86 S.W. (2d) 595, 608, 230 Mo. App. 443; Moses v. Loomis, 40 N.E. 952, 156 Ill. 392, 47 Am. S.R. 194; Walker v. Rednalloh Co., 13 N.E. (2d) 394, 299 Mass. 591; Sanka Coffee Corporation v. Ramcadis Realty Corporation, 242 N.Y.S. 630, 136 Misc. 919, affirmed 249 N.Y.S. 867, 232 App. Div. 653; Abel v. Wuesten, 133 S.W. 774, 141 Ky. 766, Ann. Cas. 1912C 389; D'Anna v. Rupp, App., 32 S.W. (2d) 136.)

The third case presents a somewhat anomalous situation, to say the least. It being another forcible and detainer action, the complaint is based only upon default in payment of rent. However, the defendant's fifth defense asserts the action is also based upon breach of the agreement not to remodel or make material alterations without the approval of the plaintiff.

Strangely the plaintiff seems to accept this as an issue, and by paragraph III of his reply "alleges that this action * * * is for failure to correct the alterations previously made since the filing of said action" (the case in Forcible Entry & Detainer filed May 1, 1950.)

As nearly as we are able to determine, the issues in this third action were—(1) the sufficiency of the complaint; (2) jurisdiction of the justice court; (3) whether the September 27, 1950 final judgment in the previous action brought March 5, 1949, was res adjudicata as to this third suit; (4) whether the agreement was breached "for failure to correct" material unauthorized alterations alleged to have been made since May 1, 1950; (5) whether default in rent payments were waived, and; (6) the sufficiency of the rent tender made on September 7, 1951.

From the record and the general nature of the district court's judgment we have no way of determining whether the question of law raised by the issues (1), (2) and (3) entered into the conclusion expressed in the court's judgment.

It would not benefit the appellant if we were to hold that as a matter of law the complaint was sufficient or that the justice of the peace had jurisdiction, as we cannot say from the record which way the lower court held with respect to these issues. Nor can we say the trial court determined that the matter was res adjudicata.

If, however, we found that there was no substantial evidence to show there had been a waiver, consent or estoppel as to the alleged breach of agreement, or that insufficient tender of rent had been made, whether that insufficiency occurred because the tender was made after default or by reason of the amount offered, then and then only would we be compelled to find that as a

matter of law the complaint—aided by evidence—was insufficient, or that the justice of the peace was without jurisdiction, in order to find support for the district court's dismissal of the action.

Notwithstanding what we have said, it seems to us that the complaint—at least as it is aided by the evidence—is sufficient.

The jurisdiction of the justice of the peace is questioned because defendant claimed the action involved an interest in real estate. The matter seems to have been settled adversely to this claim in Ferguson & Sons vs. Haygood, 67 Wyo. 422, 225 P. (2d) 336, and previous decisions there cited.

Whether there was a former final decision affecting all the issues here involved is not clear from the record, so we refrain from comment, especially as it is not necessary in view of what we further say.

Inasmuch as there is no evidence to support the contention set forth in the plaintiff's reply, that the lease was violated by defendant's failure "to correct material unauthorized alterations alleged to have been made since May 1, 1950" there being no such requirement in the lease, this matter is of little importance.

As to the defendant's contention that the forcible detainer action was improperly brought, because termination of the lease could only occur by the lapse of time and not by invoking provisions for cancellation or forfeiture, we are again unable to determine that this either did or did not influence the court's decision, and, for the same reason, we cannot say what, if any, effect the defendant's contention that waiver occurred by plaintiff's acceptance of rent after bringing the May 1, 1950 action, had upon the lower court's judgment.

As to the sufficiency of the tender, while it may be true that the first tender of the defaulted rent for September 1951 might more properly have included interest accruing from the due date September 1, 1951 to the tender date September 7, 1951, a matter of some twenty-four cents, together with an offer to pay any damages suffered by plaintiff by reason of the short delay, still at the time of interposing its equitable defense in the second case as will be seen, the defendant did supplement his original tender by including these items. The matter seems trivial and the objection hypertechnical. In any event, we cannot say the district court gave its judgment upon this ground.

We point out that the equitable relief was not sought by defendant in either of the forcible entry and detainer cases, yet from the briefs and arguments of both parties, we might well conclude that both parties assumed such defense had been considered by the trial court in this third action.

Where several actions are consolidated for trial, the evidence received must be deemed applicable in its entirety to each of the cases, unless the record discloses the contrary or the evidence is immaterial or irrelevant to the issues in a particular case.

In the second case, the defendant admitted the default, but sought equitable relief from forfeiture of the lease.

We are convinced that the majority rule, supported by innumerable authorities, is that equitable defenses may be offered in ejectment and similar actions.

The appellant, however, stresses his contention that even though relief from such default might be properly considered and granted in some cases, such relief may

never be given when there is statutory provision for forfeiture on nonpayment of rent.

To support his position, appellant quotes at length from the Oregon case of Rainey vs. Quigley, 180 Ore. 554, 178 P. (2d) 148, 150, the statute of which State provides:—

" 'The failure of a tenant to pay the rent reserved by the terms of his lease for the period of ten days (unless a different period be stipulated in the lease) after the same becomes due and payable, shall operate to terminate his tenancy, and no notice to quit or pay said rent shall be required to render the holding of such tenant thereafter wrongful; * * * ' "

But our statute authorizing the action of forcible entry and detainer to obtain possession "against tenants holding over their terms after a failure to pay rent for three (3) days after the same shall be due", W.C.S. 1945 Sec. 14-1502, does not go so far as to say that such failure to pay rent terminates the lease.

The text of American Jurisprudence, 32 Am. Jur. "Landlord and Tenant, p 725, Sec. 855, says in part:

" * * * Provisions for the forfeiture of a lease for nonpayment of rent, whether contractual or statutory, are considered in equity as securing the rent, and not as providing for the forfeiture of the lease where the tenant acts in good faith and pays promptly on demand. * * * "

and in support of this statement cites Farmer vs. Pitts, 108 Neb. 9, 187 N.W. 95, 24 A.L.R. 719; and, House vs. Lewis, 108 Neb. 257, 187 N.W. 784, 23 A.L.R. 877.

The Oregon court noticed both of these decisions which involved forcible entry and detainer actions brought under a Nebraska statute (Ch. 21, Art. XIV, Sec. 9418, p. 2889, The Compiled Statutes of Nebraska, 1922) which provided, in part, as follows:

" * * * a tenant shall be deemed to be holding over his term whenever he has failed, neglected, or refused to pay the rent or any part thereof when the same became due; * * * "

But the Oregon court, in Rainey vs. Quigley, supra, was not persuaded by House vs. Lewis, explaining that the Nebraska court had held:

" * * * that the tenant had not breached the lease because it was the duty of the landlord to demand payment of rent on the leased premises, which he had not done. * * * " (178 P. (2d) 148, 152)

Similarly, the Oregon court—in Rainey vs. Quigley, supra—gave little weight to the case of Farmer vs. Pitts, intimating that the decision was upon other grounds, namely:

" * * * First, that, under the facts, there was no refusal, failure or neglect on the part of the tenant to pay the rent when due; and, second, that, even though there was a default, it was technical and inconsequential, and equity would relieve against the forfeiture. * * * " (178 P. (2d) 148, 152)

without considering the rule that statutory forfeiture would not be relieved against.

But, the Oregon court seemingly overlooked the fact that the Nebraska court, in Farmer vs. Pitts, 108 Neb. 9, 12, 13, 187 N.W. 95, 24 A.L.R. 719, specifically said: " * * * Now, the provision of the statute regarding a forcible entry and detention, as well as the provision in the lease as to the nonpayment of the rent, is for the security of such rental to the lessor, not for the purpose of giving him an undue advantage and permitting him unjustly to obtain a forfeiture of the lease."

True, there was a material difference between the Oregon statute and the Nebraska statute, just as there is a material difference between the Oregon statute

and our Wyoming statute. In Oregon the court held its law provided for a statutory forfeiture and made its decision upon that ground. In Nebraska the court held its statute provided only for security for the payment of rent.

If we are to give proper consideration then to the appellant's position that the plaintiff's third action was brought wholly by virtue of our forcible entry and detainer statute and, hence, is a proceeding to enforce a statutory forfeiture rather than a forfeiture provided for by lease agreement, we must first decide whether the Wyoming statute is to be construed as providing for such forfeiture.

We have already noted that while the Oregon statute expressly provides that failure to pay rent terminates the lease, thus in effect saying such failure forfeits the lease, our Wyoming statute merely says that such failure to pay rent gives a right of summary action for possession and nothing more. On the other hand, in Nebraska where the statute concerned is more of the same tenor as our law, the court held it was intended to provide only security for the payment of rent.

While we may not disregard a plain and unequivocable requirement written into our law by the legislature—no matter how harsh and unjust is might seem to us—we do not feel called upon to read into our laws that which is not there written, especially when to do so would offend against equity and good conscience. Therefore, we hold that our statutes of forcible entry and detainer do not amount to statutory provision for forfeiture.

There are other matters which weaken the appellant's contention that this third action is brought strict-

ly by virtue of the rent nonpayment provision of our statute.

The reasons given in the Notice to Quit, and upon which the plaintiff relied to fulfill the precedent requirement for bringing this action, were stated to be— "that you have failed to pay rent for September, 1951, for more than three days after the same was due and in violation of your lease; you have remodeled and made alterations of the building and premises without approval; and, your term of tenancy has been declared terminated by option of the owner."

This notice then was not confined to the single matter of rent nonpayment, but included other alleged violations of the lease between the parties. Immediately upon the receipt of the notice and before the plaintiff could legally or did actually commence his action, the defendant tendered the rent.

In the case of Dakota Hot Springs Co. vs. Young, 9 S.D. 577, 579, 70 N.W. 842, in an action of forcible entry and detainer brought under a statute very similar to ours and providing that the action of forcible entry and detainer may be maintained " 'when a lessee in person or by subtenant * * * fails to pay his rent for three days after the same shall be due,' " the court held that a tender made before the action was brought constituted a good bar to an action to enforce a forfeiture.

What has been previously said herein relative to the tender of the defaulted rent applies equally as well to this case, but here where equitable relief is sought, to ascribe merit to the objections made to the tender, would be contrary to the very principles of the equity defendant seeks in its defense. As a matter of fact, the plaintiff has not, nor has he ever, asserted any claim for damage due to delay in the payment of rent, nor has be claimed the small amount of interest which

accrued during the short period of delay. To forfeit the defendant's valuable rights under the lease on such meager ground, would offend good conscience.

In the Maine case of Shriro vs. Paganucci, 113 Me. 213, 93 A. 358, p. 359, where the facts were not dissimilar to those here, the court granted equitable relief to the tenant, noting in part:

" * * * In the last months of a long contract as shown by the pleadings, a delay of less than 36 hours occurred in the payment of rent, and on that account alone we are asked to affirm the judgment of the superior court, thus declaring in effect a forfeiture in this case."

We feel that under all the circumstances present, this objection of the plaintiff is not well taken.

It is insisted that the lease be forfeited because respondent connected an improperly vented stove in the building, thereby increasing appellant's insurance costs twenty percent due to greater fire hazard. But counsel does not make clear to us how this constitutes a remodeling or material alteration, nor is any authority to that effect cited. The appellant may—and probably should—have some protection against having his property unduly subjected to additional fire hazard and, likewise, be saved from the increased cost of his insurance, but he is not entitled to a forfeiture of the lease, except for violation of the covenants and the agreements of the lease, which by its terms are made a grounds for such forfeiture.

We find no error in the order deducting the sum of $10 from the amount directed to be paid the plaintiff. Our statutes in Section 1, Ch. 78, Session Laws of Wyoming, 1951, pp. 99-101, expressly so provide.

Because of the consolidation of these cases for trial,

brief and argument, it has been extremely difficult to properly apply the evidence and arguments of respective counsel to the divergent issues in the several cases. We have endeavored to give our views with respect to all of the points raised by each party, although we are satisfied that there was no reversible error in the lower court's separate judgments in these three cases, which is discoverable from the record. The three judgments will be affirmed.

*Affirmed.*

BLUME, Chief Justice, and RINER, Justice, concur.